[L. A. No. 26528. In Bank. Dec. 22, 1961.]

ALEX J. KUNTZ, Plaintiff and Respondent, v. DEL E. WEBB CONSTRUCTION COMPANY, ▮ Defendant and Appellant.

Richard B. Coyle and Henry F. Walker for Defendant and Appellant.

Rose, Klein & Marias, Victor C. Rose, Robert P. Dockeray, Ernest L. Graves and Arthur Sherman for Plaintiff and Respondent.

GIBSON, C. J.—Plaintiff was employed in the construction of a building when he was injured as the result of stepping on a panel of steel decking which gave way beneath him. Del E. Webb Construction Company was the general contractor for the erection of the building; the decking was being installed by employees of Mitchell Steel, Inc., a subcontractor; and plaintiff's employer was another subcontractor, Patent Scaffolding Company. This action was brought to recover damages against Webb and Mitchell, and the jury found against them. Webb appeals from the ensuing judgment and from the denial of its motion for judgment notwithstanding the verdict, contending that the evidence fails to establish a basis for holding it liable and that the court erred in instructing the jury.

The building under construction was 13 stories high, and Mitchell was engaged in laying steel decking designed to act as a form for concrete floors to be poured later. The decking, which was composed of metal strips several feet long and 2 feet wide, was laid in the same manner at each level of the building. Mitchell's employees placed the panels between the girders at a given floor level and fitted the pieces together along the sides by means of interlocking lips, and at a later time the ends were welded to the girders on which they rested. In order for the decking to be safe for use as a temporary walk before welding, it was necessary to have the ends of each panel rest on the girders and overlap them by at least 6 inches. If one end was unsupported, the panel of decking could fall

under the weight of a man who walked on it. There is testimony from which it can be inferred that ironworkers were permitted to work as a usual matter at levels of the building where panels of decking had not yet been welded to the girders.

Plaintiff's employer, Patent, was erecting the material tower, which was to be used to carry building material to the various floors of the structure. Plaintiff, who was an ironworker, had been on the job for about two weeks, and during that period he had walked on decking a number of times in order to go from one part of the building to another. On the day of the accident he was working at the 13th-story level where employees of Mitchell were also working. In performing his duties he walked on decking that had been installed there and used girders where no decking had yet been laid. While walking on a girder, he passed the place of the accident in the morning and again at 1:45 p. m., noticing that there was no decking at that place. About 2:45 he observed that some decking had been placed there which looked the same as decking he had previously walked on while working on the job. However, at the ends farthest from him the panels had not been placed on the girder, leaving a gap of about 2 inches. As he stepped on the first panel it and the adjoining one gave way, and he fell to the floor below.

John Jepson, a state safety engineer, testified that before the accident he had made several visits to the construction project and noticed that decking was being laid in an improper manner. He noticed that open spaces had been left in the decking on many of the floors, in some cases because a panel of decking did not reach a girder. On a number of occasions before the accident he discussed his observations not only with a representative of Mitchell, but also with Webb's project superintendent, and, although his testimony is not entirely clear as to exactly what subjects were discussed, it permits an inference that the conversations dealt in part with the existence of gaps between panels and girders and the need to take precautionary measures. Following an inspection of the building on the day before the accident, he left a written notice with Webb's superintendent which stated: "FLOOR OPENINGS: Fence in all small floor openings, or shaft openings, or cover same with material strong enough to safely carry any load which may be imposed upon it. 1571." He testified that the term "small floor openings" as used in the notice included gaps between panels and girders and that the safety order referred to, section 1571, applied to such gaps.

104

It is undisputed that Webb did not give orders to the employees of Mitchell or otherwise assume to direct the installation of the decking. Such work was under the control of Mitchell, and no employee of Webb was present at the part of the building where the accident occurred. It was the responsibility of Webb's superintendent, who was in charge of the construction project as a whole, to see that the specifications of subcontracts were complied with.

The jury could properly find that the collapse of the decking when plaintiff stepped on it was due to a small gap left by Mitchell's employees between the far ends of the panels and the girder upon which they should have been placed for support. Although there is no evidence that Webb was aware that this condition existed with respect to those particular panels, the testimony of the safety engineer is sufficient to support an inference that Webb knew that Mitchell's employees had been guilty of leaving such gaps over a considerable period of time prior to the accident. Webb's knowledge that persons in plaintiff's position were thus being exposed to danger can be inferred from the evidence, particularly from the showing that ironworkers commonly worked at story levels where the decking had not yet been welded to the girders. As far as appears, no one representing Webb warned plaintiff or other ironworkers of gaps between panels and girders or took any corrective step before the accident with respect to such gaps.

In several cases where an employee of an independent contractor was injured as the result of a danger known to the defendant owner or general contractor who had engaged the services of the plaintiff's employer, liability has been imposed on the ground that the plaintiff was an invitee of the defendant, who thus owed him a duty to exercise reasonable care to keep the premises reasonably safe for his use or to warn him of dangers which were not obvious. (E.g., *Florez* v. *Groom Development Co.*, 53 Cal.2d 347, 354-357 [348 P.2d 200]; *Austin* v. *Riverside Portland Cement Co.*, 44 Cal.2d 225, 229-234 [282 P.2d 69]; *Gonzales* v. *Robert Hiller Constr. Co.*, 179 Cal.App.2d 522, 529 et seq. [3 Cal.Rptr. 832]; *Raich* v. *Aldon Construction Co.*, 129 Cal.App.2d 278, 284 et seq. [276 P.2d 822]; *Revels* v. *Southern Cal. Edison Co.*, 113 Cal.App.2d 673, 677-679 [248 P.2d 986].) In the *Austin, Gonzales* and *Raich* cases, it was held to be immaterial that the danger causing the injury was or may have been due in part to the negligence

of plaintiff's employer or another contractor working on the premises. (See also Rest., Torts, § 449.)

The cases relied upon by Webb are not contrary to the decisions discussed above. For example, in *McDonald* v. *Shell Oil Co.*, 44 Cal.2d 785, 789 [285 P.2d 902], the court pointed out that the defendant had no knowledge that the equipment causing the plaintiff's injury was being used in a dangerous and unusual manner. Statements in *Bedford* v. *Bechtel Corp.*, 172 Cal.App.2d 401, 412 et seq. [342 P.2d 495], with respect to the effect of the defendant's knowledge of the danger must be read in the light of the determination of the court that the danger there involved was an obvious one.

We are satisfied that where a general contractor knows from matters coming to his attention that work done by a subcontractor has created a type of dangerous condition which may reasonably be expected to recur unless precautions are taken and that employees of other subcontractors may be exposed to the danger without being aware of its existence, he has a duty to exercise reasonable care to protect those employees and may be held liable if his failure to do so is a proximate cause of injury to them. There was sufficient evidence to hold Webb liable, and the motion for judgment notwithstanding the verdict was properly denied.

The question remains whether the judgment must be reversed because of instructions given to the jury at plaintiff's request. By one instruction the court stated in effect that, if a dangerous condition is created by the negligence of an employee of a subcontractor, the law "presumes" that the general contractor "had knowledge of said condition from the time of its creation." Plaintiff concedes that this instruction was not justified by applicable common-law principles but argues that the instruction was proper by reason of provisions of the Labor Code which impose upon employers duties relating to safety in employment. He asserts that these provisions impose an affirmative duty to supervise safety in a situation such as the one before us and that they have the effect of imputing to the general contractor the knowledge of a negligent subcontractor in the same way that an employer is bound by the knowledge of his servant at common law under the doctrine of respondeat superior. It should be pointed out in this connection that by other instructions given at plaintiff's request the jury was specifically told that safety provisions of the Labor Code were applicable in determining Webb's liability. The court read several of the provisions and stated

in part that Webb was an employer within the meaning of the provisions, that it was under a nondelegable duty to comply with them, and that if it violated any of them, a rebuttable presumption of negligence arose which could be overcome by evidence of justification or excuse.

Among the provisions read to the jury were sections 6400 and 6401 of the Labor Code, which provide that every "employer" shall furnish employment and a place of employment which are "safe" for the employees therein and shall do everything reasonably necessary to protect the "safety" of employees, including the use of safety devices, safeguards, and methods reasonably adequate to insure safety. Section 6304 provides that the term "employer" shall include "every person having direction, management, control, or custody of any employment, place of employment, or any employee." Section 6310 defines the terms "safe" and "safety" as "such freedom from danger to the life or safety of employees as the nature of the employment reasonably permits."

These provisions of the Labor Code should not be construed as meaning that, where a general contractor or owner of premises does nothing more with respect to the work done by an independent contractor than exercise general supervision and control to bring about its satisfactory completion, it is his responsibility to assure compliance with all applicable safety provisions of the code and regulations issued thereunder, including those relating to the manner in which the independent contractor performs operative details of the work not affecting its ultimate result.

We recognize that an employer-employee relationship in the usual sense is not essential for application of the Labor Code. (*Porter* v. *Montgomery Ward & Co., Inc.*, 48 Cal.2d 846, 847-849 [313 P.2d 854].) For example, the code has been applied where an employee of an independent contractor was injured by the dangerous manner in which the defendant owner of the premises operated his machinery (*Maia* v. *Security Lumber & Concrete Co.*, 160 Cal.App.2d 16, 18 et seq. [324 P.2d 657]), by a dangerous condition existing when the owner turned the premises over to the independent contractor (*Johnson* v. *A. Schilling & Co.*, 170 Cal.App.2d 318, 324 [339 P.2d 139]), and by a dangerous condition due to the failure of the owner to complete construction after the area in question had been returned to his control (*Atherley* v. *MacDonald, Young & Nelson*, 142 Cal.App.2d 575, 581 et seq. [298 P.2d 700]), as well as where an employee of one subcontractor was

injured by the dangerous method in which work was being done by another subcontractor and the defendant general contractor had by agreement authorized the use of the method resulting in injury (*Gonzales* v. *Robert Hiller Constr. Co.*, 179 Cal.App.2d 522, 529 et seq. [3 Cal.Rptr. 832]).

No cases have been found, however, holding that the mere right to see that work is satisfactorily completed imposes upon the one hiring an independent contractor the duty to assure that the contractor's work is performed in conformity with all safety provisions. To the contrary in *Hard* v. *Hollywood Turf Club*, 112 Cal.App.2d 263, 266 et seq. [246 P.2d 716], where the defendant general contractor had no relation to a subcontractor's work other than the right of general supervision and control, the court held that safety provisions of the code relating to the work done by the subcontractor were not applicable in determining the defendant's liability and the propriety of this holding was recognized in two of the cases cited above which applied the Labor Code (*Johnson* v. *A. Schilling & Co.*, 170 Cal.App.2d 318, 323 [339 P.2d 139]; *Atherley* v. *MacDonald, Young & Nelson*, 142 Cal.App.2d 575, 582 [298 P.2d 700]). The opinion in the *Hard* case pointed out that to hold in such a situation that a general contractor has the duty of overseeing labor done by various subcontractors, of inspecting the equipment used by them, and of enforcing all applicable safety provisions would be to place an extremely onerous burden upon him.

Webb, as we have seen, did not give orders to employees of Mitchell or otherwise assume to direct the installation of the decking; Mitchell was in full control of the operative details of that work. As far as appears, the only control exercised by Webb with respect to the installation of the decking was for the purpose of securing satisfactory completion. There is no sound basis in the present record for applying the provisions of the Labor Code in determining Webb's liability, and it was prejudicial error to give the instructions discussed above.

The order denying the motion for judgment notwithstanding the verdict is affirmed, and the judgment is reversed.

Traynor, J., Schauer, J., Peters, J., White, J., and Dooling, J., concurred.

McComb, J., concurred in the judgment.