[Civ. No. 25592.  Second Dist., Div. Three.  June 13, 1962.]

JOYCE JOHNSON et al., Plaintiffs and Appellants, v. CAL-WEST CONSTRUCTION COMPANY et al., Defendants and Respondents.

Wyman, Finell & Rothman and Marvin Finell for Plaintiffs and Appellants.

Cushman & Grover and Henry E. Kappler for Defendants and Respondents.

SHINN, P.J.—This action was brought by the surviving wife and children of John Johnson for the recovery of damages resulting from the death of Mr. Johnson in a fall from scaffolding. It was alleged that the accident was due to the defective and dangerous condition of the scaffolding. Named as defendants were Carl Cotrell, Daniel Sifling, Grace Smith, Cal-West Construction Company, a partnership, W. J. O'Neal and Louis M. Bailey. Cotrell paid $6,000 for a covenant not to sue. The action was dismissed as to certain defendants and proceeded to trial only against Cal-West, O'Neal and Bailey. Plaintiffs appeal from a judgment on verdict in favor of these defendants.

Error is assigned in the instructions that were given and the claimed refusal to admit in evidence certain safety orders of the Department of Industrial Relations, Division of Industrial Safety, with respect to the construction of the scaffolding.

It was established that O'Neal and Bailey as copartners of Cal-West entered into an agreement to construct an apartment building upon the land of Grace Smith in Covina. The plastering and lathing was sublet by contract to Cotrell, who sublet the lathing to defendant Sifling, who employed Johnson as foreman on the lathing job. Cotrell constructed scaffolding around the building. Johnson, while engaged in lathing, fell from the scaffolding and suffered fatal injuries. It was and is the theory of plaintiffs that the cause of Johnson's fall was some unsafe condition of the scaffolding.

It was established by uncontradicted evidence that Cal-West did not construct the scaffold or furnish any material for the same, did not retain any control over the scaffolding or over the work done under the subcontract to Cotrell and did not in any particular undertake to direct the manner in which the scaffolding would be constructed or maintained or the lathing

or plastering would be carried on. The sole interest of Cal-West was to see that the work was done and finished in accordance with its contract with Cotrell.

The court gave the instructions that are set out in the footnote.[1] Those numbered 1 and 3 were given on the court's own motion, No. 2 at the request of defendants. The instructions were correct statements of the law.

Plaintiffs contend that it was the duty of Cal-West to furnish for Johnson a safe place to work, that the scaffolding was shaky and unsafe, which fact Cal-West would have discovered in the exercise of ordinary care, and that Cal-West neglected its duty to inspect the scaffolding and to see that it was properly constructed and maintained. In brief, the contention is that a general contractor, under all circumstances, has a duty to provide, or see that there are provided, safe conditions for work of the employees of subcontractors; the duty of the general contractor is the same as that of the subcontractor toward the employees of the latter, and he is bound to exercise ordinary care to see that his subcontractors have furnished their workmen with safe places for work.

Plaintiffs concede that the contentions they make were rejected by the court in *Hard v. Hollywood Turf Club,* 112 Cal. App.2d 263 [246 P.2d 716]. It was there held that in the absence of actual knowledge possessed by a general contractor of a dangerous condition created in the course of work, over which he had no control or supervision, there was

[1] 1. "A general contractor may not be held liable for the death of an employee of a subcontractor, which resulted from a defective or dangerous condition of scaffolding, not supplied or constructed by the general contractor, and of which defective or dangerous condition he had no knowledge."

2. "If you find from the evidence that the scaffold was built and furnished by the plastering subcontractor, Carl Cotrell, and that the defendants O'Neal and Bailey did not direct the details of the manner in which the scaffold was constructed, or exercise any control over its construction, the defendants are not chargeable with any negligence on the part of the said Carl Cotrell in the construction of the scaffold."

3. "A general contractor has no duty to maintain, change or repair scaffolding which is supplied and erected by a subcontractor for the use of the latter's employees. The general contractor has no duty to inspect such scaffolding for the purpose of discovering defects or ascertaining if it is safe for use by the subcontractor's employees. If, however, the general contractor has actual knowledge of defects in or other dangerous condition of scaffolding, which defects or conditions are not readily apparent to the senses, he has a duty to give reasonable warning thereof to intended users. He is entitled to assume that employees of the subcontractor will perceive that which would be obvious to them upon the ordinary use of their own senses, and he has no duty to give notice or warn of an obvious danger."

no authority for adjudging him liable for injuries suffered by a workman in the employ of a subcontractor on a construction job, caused by a fall from a defective scaffold which had been made and supplied by the subcontractor alone. Plaintiffs contend that the decision in *Hard* has been overruled by other cases, namely, *Austin* v. *Riverside Portland Cement Co.*, 44 Cal.2d 225 [282 P.2d 69], *Gonzales* v. *Robert Hiller Constr. Co.*, 179 Cal.App.2d 522 [3 Cal.Rptr. 832] and *Revels* v. *Southern Cal. Edison Co.*, 113 Cal.App.2d 673 [248 P.2d 986]. The cases are distinguishable on their facts from those in *Hard* and in the present case.

In *Austin*, liability upon an owner was imposed upon the ground that it had control of the premises and instrumentalities where the dangerous condition existed, had knowledge of the condition and in the exercise of care would have caused it to be remedied. In *Gonzales*, the superintendent of the general contractor had agreed with the subcontractor as to the method pursued by the latter and knew that the condition was a dangerous one. In *Revels*, the court said: "The jury might reasonably have concluded that: defendants were in control of the premises, and had complete supervision of all of the work; a dangerous condition existed on the roof of the building; defendants had knowledge of the dangerous condition; they knew the wires were 'too close to the building'; . . . defendants failed to exercise ordinary care in not warning Chase of the danger. . . ."

A second argument of appellants is that the court "excluded" evidence of certain safety rules for employers adopted under part I, division 5, section 6400 et seq. of the Labor Code. We do not find that any such safety orders were "excluded" from evidence.

Plaintiffs requested, and the court declined to give, instructions based upon construction safety orders of the Department of Industrial Relations, Division of Industrial Safety, which orders, by the instructions, would have placed upon the general contractor a duty to use ordinary care to provide the employees of the subcontractor with a safe place to work, even though he retained no control or supervision of the work of the subcontractor, or the facilities provided by the latter. The instructions were properly refused. It was directly held in *Hard* that there is no authority in the language of the Labor Code, or the decisions, for holding a general contractor liable for defective scaffolding made and supplied by a subcontractor and it was expressly held that

a general contractor is not the employer of workmen of sub-contractors so as to impose upon him the duties that the safety orders impose upon employers generally. This holding in *Hard* was expressly approved in *Kuntz* v. *Del E. Webb Constr. Co.*, 57 Cal.2d 100 [18 Cal.Rptr. 527, 368 P.2d 127].

Even if the scaffolding was shaky the fault was not that of defendants O'Neal and Bailey and they were not shown to have been guilty of any breach of duty toward Johnson. The jury was properly instructed.

The judgment is affirmed.

Ford, J., and Files, J., concurred.