[Civ. No. 20574.   First Dist., Div. Two.   Jan. 17, 1963.]

ROSE DELGADO, as Administratrix, etc., et al., Plaintiffs and Respondents, v. W. C. GARCIA AND ASSOCIATES, Defendant and Appellant.

Partridge, O'Connell, Partridge & Fall and George Brunn for Defendant and Appellant.

Morgan, Beauzay & Holmes, Robert Morgan and B. K. Wines for Plaintiffs and Respondents.

KAUFMAN, P. J.—This is an appeal from a judgment for plaintiffs in an action for damages for wrongful death and personal injuries. Plaintiffs are Rose Delgado, the surviving wife and administratrix of the Estate of Fortunato C. Delgado, and Jess L. Martinez. Delgado was killed and Martinez injured when the sides of a sewer trench collapsed. Delgado and Martinez were the employees of a subcontractor, retained for the sewer work by the defendants, W. C. Garcia and Associates, the general contractors and owners, who were building the sewer for the subdivision under a contract with the City of San Jose. Under the terms of this contract, the appellants agreed to comply with precautions against the caving in and sloughing of the sides of ditches as required by the Industrial Commission for sewer trenching, and provided performance bonds and indemnity agreements.

The City of San Jose, two individuals, as well as the appellants, were named as defendants in the action. The trial court awarded a judgment of nonsuit to the city and the individuals and entered its judgment on a jury verdict in favor of Rose Delgado for $30,000 and in favor of Jess L. Martinez for $27,300. On this appeal from the judgment, the contentions are that: 1) the trial court committed prejudicial error in reading sections 6400 and 6402 of the Labor Code and the safety orders to the jury as these were not applicable; 2) the evidence does not support the verdict; and 3) the trial cour erred in the admission of certain evidence.

The facts are not in dispute. As indicated above, appellants were the owners and subdividers of the real property in

question, as well as the general contractors. Appellants applied to the city for statutory permission to file a subdivision map prior to the installation of the improvements for streets, sewers, storm drainage, and utilities. Under the appellants' agreement with the city, appellants agreed to construct all of the improvements and do all the work in accordance with the plans and specifications on file in the office of the city engineer, in compliance with the municipal code and the laws of the State of California. The agreement provided: "Precaution against caving in or sloughing in of the sides of the ditch shall be taken by placing therein lagging, and/or bracing, in the manner provided by the Rules of the Industrial Commission for sewer trenching and where unstable soil is encountered the Engineer will require such lagging and/or bracing to be done immediately after the excavation of the trench in order that the requirements for minimum trench width herein specified will be met. All trenches shall be pumped or drained free of water before laying of pipe. All existing trenches encountered while digging shall be bridged by a method approved by the Engineer."

Appellants subcontracted the sewer work to the W. H. Ebert Corporation. Delgado and Martinez, both experienced employees of the subcontractor, were injured on October 29, 1958, when sides of a trench collapsed and buried them. The record also indicates that about a week before the accident, during the course of the excavation in the area, the subcontractor's employees struck an irrigation pipe which flooded the entire trench and soaked the ground.

The first and major contention on appeal is that the judgment must be reversed because the jury was instructed about sections 6400 and 6402 of the Labor Code and the applicable safety orders. Appellants rely on *Kuntz* v. *Del E. Webb Constr. Co.*, 57 Cal.2d 100 [18 Cal.Rptr. 527, 368 P.2d 127] and *Woolen* v. *Aerojet General Corp.*, 57 Cal.2d 407 [20 Cal.Rptr. 12, 369 P.2d 708]. ▉ These cases hold that where an owner or general contractor does nothing more with respect to the work done by an independent contractor than exercise general supervision and control to bring about its satisfactory completion, it is not its responsibility to assure compliance with all applicable provisions of the Labor Code, including those relating to the manner in which the independent contractor performs the operative details of his work.

In the instant case, however, appellants' contract with the

city provided for compliance with the applicable safety orders. This question was not present in either of the cases relied upon by the appellants. Thus, appellants' liability here is not determined solely by the rule of those cases, but depends on whether their duties to the city were delegable. The general rule is that duties to the public are nondelegable duties and that under such circumstances, the general contractor remains liable (*Snyder* v. *Southern Cal. Edison Co.*, 44 Cal.2d 793 [285 P.2d 912]). ■ In that case, the court said at pages 799-800: "Where an activity involving possible danger to the public is carried on under public franchise or authority the one engaging in the activity may not delegate to an independent contractor the duties or liabilities imposed on him by the public authority [citations] and generally speaking there are many situations in which the person cannot absolve himself from liability by delegating his duties to an independent contractor. (27 Am.Jur., Independent Contractors, §§ 48-50; 23 A.L.R. 985; 29 id. 736; 20 A.L.R.2d 868; Rest., Torts, §§ 410-429; Prosser on Torts, p. 486 et seq.; Harper, Law of Torts (1933), § 292.) The matter is discussed by Harper, as follows: '. . . one who employs an independent contractor is, as a general rule, not liable for the misconduct of the latter or of his servants while acting within the scope of the contract. The idea responsible for this general rule of nonliability is the want of control and authority of the employer over the work, and the consequent apparent harshness of a rule which would hold one responsible for the manner of conducting an enterprise over which he wants the authority to direct the operations. Again so far as the activity immediately causing the injury is concerned, it is the contractor rather than the contractee who is the entrepreneur and who should ordinarily carry the risk. . . .

" ' [There are] certain exceptions and apparent exceptions which, with increasing tendency, seem likely to overshadow in importance and scope the rule itself. . . . A number of situations exist, however, which are actual cases of vicarious liability, that is, liability for the misconduct of the independent contractor and his servants although the contractee has himself been free from personal fault. A number of factors concur to constitute the grounds of policy for such allocation of risk from the immediate to the general entrepreneur. These considerations, in fact, constitute such a powerful argument for the liability of the employer of an independent contractor that it would seem highly desirable for the courts to adopt the

rule of liability and confine nonliability to a few exceptional cases. This, the American courts, at least, have not yet done, but there is every reason to believe that sound social policy will induce the courts to make further inroads upon the rule of nonliability in this class of cases.

■ " 'The first genuine case of liability for misconduct of an independent contractor or his employees is the case of the socalled "nondelegable" duty. Where the law imposes a definite, affirmative duty upon one by reason of his relationship with others, whether as an owner or proprietor of land or chattels or in some other capacity, such persons can not escape liability for a failure to perform the duty thus imposed by entrusting it to an independent contractor. . . . It is immaterial whether the duty thus regarded as "nondelegable" be imposed by statute, charter or by common law. Thus where a railroad company was required by statute to construct fences along its right of way and it employed a contractor to construct the fences, the company was liable for the loss of a cow killed by reason of the contractor's failure to build the fences as required by the statute. The same rule applies to the duty imposed upon railroads to erect gates at crossings, to construct cattle guards, and to maintain crossings in good condition. So, too, the owner of land is liable for the failure of an independent contractor to perform affirmative duties toward invitees and others to whom the occupier is bound to keep his premises in a reasonably safe condition. . . .' "

The *Snyder* case has long been followed (see *Di Muro* v. *Masterson Trusafe Steel Scaffold Co.*, 193 Cal.App.2d 784 [14 Cal.Rptr. 551]; *Atherley* v. *MacDonald, Young & Nelson,* 142 Cal.App.2d 575 [298 P.2d 700]), and was cited with approval in *Woolen* v. *Aerojet General Corp:, supra,* page 411. It is clear that this is the very rule the trial court had in mind when giving the instructions here questioned, as the trial court instructed the jury: "That is to say, the duty of compliance with the aforementioned safety orders and Labor Code sections cannot be transferred by agreement or otherwise to plaintiff's employer or any other third party." Thus, we can only conclude that the instructions were proper here.

■ Appellants next contend that the evidence does not support the verdict. We cannot agree. An owner of premises may be liable to an employee of an independent contractor under the rule set forth in section 413 of the Restatement of

Torts[1] (*Woolen* v. *Aerojet General Corp., supra,* p. 410). Furthermore, the duty owed by a general contractor to an employee of a subcontractor, is the duty owed to invited persons. The duty is to exercise ordinary care to keep the premises in a reasonably safe condition, or to warn of danger. The duty is not limited to conditions actually known to be dangerous, but also to conditions which might have been found dangerous by the exercise of reasonable care (*Revels* v. *Southern Cal. Edison Co.,* 113 Cal.App.2d 673 [248 P.2d 986]; *Johnson* v. *Nicholson,* 159 Cal.App.2d 395 [324 P.2d 307]). In the instant case, the jury could have concluded from the evidence that the appellants failed to take the precautions for sewer trenching required by the contract with the city and failed to exercise reasonable care to provide in some other manner for the taking of these precautions. The jury could also have concluded that the bursting of the irrigation pipe and subsequent flooding of the trench were dangerous conditions which the appellants might have found in the exercise of reasonable care.

■ The final argument is that the court erred in its rulings on the admissibility of certain evidence. Appellants argue that the trial court erred in sustaining objections to certain questions posed to William Ebert, a principal of the subcontractor, whether they had ever received any orders from the appellants concerning the manner of digging the particular ditch or trench and whether the appellants had any equipment at the scene of the accident. We think the trial court properly sustained the objection on the grounds that the former was a question of law, and the latter immaterial to the issues presented.

Judgment affirmed.

Shoemaker, J., and Agee, J., concurred.

A petition for a rehearing was denied February 6, 1963, and appellant's petition for a hearing by the Supreme Court was denied March 13, 1963. Schauer, J., and McComb, J., were of the opinion that the petition should be granted.

---

[1] " 'One who employs an independent contractor to do work which the employer should recognize as necessarily creating, during its progress, conditions containing an unreasonable risk of bodily harm to others unless special precautions are taken, is subject to liability for bodily harm caused to them by the absence of such precautions, if the employer (a) fails to provide in the contract that the contractor shall take such precautions (as to which see § 416), or (b) fails to exercise reasonable care to provide in some other manner for the taking of such precautions.' "