[Civ. No. 11400. Third Dist. May 23, 1967.]

ROBERT R. WEST, Plaintiff and Appellant, v. GUY F. ATKINSON CONSTRUCTION CO., Defendant and Respondent.

---

*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.

J. Adrian Palmquist, Kenneth B. Cayocca, and Robert Hall for Plaintiff and Appellant.

Fitzwilliam, Memering, Stumbos & DeMers and T. D. Bolling, Jr., for Defendant and Respondent.

PIERCE, P. J.—Plaintiff appeals from a summary judgment granted defendant Guy F. Atkinson Construction Co. in a personal injury action.[1]

Atkinson was the general contractor under a contract with the state to build a section of a freeway (U. S. Highway 80) in Placer and Nevada Counties. Included in the contracted work was an overpass or bridge where the highway crosses railroad tracks and a county road. American Bridge Company division of United States Steel Corporation was the subcontractor to build and install the girders of this overpass. Plaintiff was an ironworker employed by U. S. Steel. He was injured from a fall from a ''float'' or hanging scaffolding.

The question is whether, under facts not in dispute, Atkinson owed a duty of care to plaintiff. Plaintiff contends it did (1) under common law principles and (2) under special provisions of the contract between the state and Atkinson for the benefit of a class of which plaintiff was a member. We agree with the ruling of the trial court that no duty was owed and that summary judgment was properly granted.

Before the accident the piers supporting the girders, the girders themselves, and the hinge plates attached to the girders for purposes of expansion were all in place. Upon orders from the state inspector, however, two of the hinge plates were required to be turned around. This involved prying them

---

[1]Defendant Fredrickson & Watson Construction Co., manufacturer of the girders, has been dismissed from the action. Bigge Draying Co., supplier of the two cranes (one with an operator), which will be described hereinafter, is still a party to the action.

loose, rearranging and reinstalling them. Two cranes rented from Bigge were being used on this work. Plaintiff and a coemployee, Maxie, were standing on the suspended "float" described, with Maxie prying the hinge plate and plaintiff steadying it so that its threads would not be stripped. For a reason not made clear to us but involving either the rigging of the sling or operation of the crane, the hinge plate jerked up, its sling slipped off and the plate cut the plywood "float" in two, plaintiff fell 30 feet or more to the ground. Plaintiff, equipped with a safety belt, was not wearing it at the time. He stated he was unable to adjust it before the accident for reasons unimportant to this decision. None of Atkinson's personnel took any part in this work; nor had they contributed in the installation of the girders originally, either by way of supervision or otherwise. One of the cranes had been leased from Bigge by U. S. Steel with an operator, the other was leased "bare" and was operated by a U. S. Steel employee. U. S. Steel foremen, supervisors and workmen, working under its resident engineer, were exclusively doing the job.

The rules governing summary judgments have been stated by this and many other appellate courts many times. Motions therefor are properly granted when, and only when, affidavits, declarations and depositions, supplementing (or contradicting) pleadings, show that no triable issue of fact exists. The moving party has the burden of proving this. All evidence will be strictly construed against him, and the function of the court is only to determine the existence of triable facts, not to decide them. Nevertheless, the purposes of the summary judgment statute are salutary since through its proper application the congestion of our overloaded courts is lightened, unnecessary expense to litigants is avioded, and our creaky wheels of justice are lubricated. The summary judgment process is ideally applied when it is disclosed there are only issues of law upon uncontested, untriable facts, a situation we find in the appeal before us. (Code Civ. Proc., § 437c; *Walsh* v. *Walsh,* 18 Cal.2d 439, 442 [116 P.2d 62]; *Premo* v. *Griggs,* 237 Cal.App.2d 192, 195 [46 Cal.Rptr. 683]; *Canifax* v. *Hercules Powder Co.,* 237 Cal.App.2d 44, 49 [46 Cal.Rptr. 552]; *Saporta* v. *Barbagelata,* 220 Cal.App.2d 463, 468 [33 Cal.Rptr. 661]; *Pacific Inter-Club Yacht Assn.* v. *Richards,* 192 Cal. App.2d 616, 620 [13 Cal.Rptr. 730].)

The foregoing recital of facts shows Atkinson was a general contractor: U. S. Steel was an independent subcontractor.

■ Ordinarily where an owner or general contractor does nothing more with respect to the portion of the construction job done by an independent subcontractor than exercise general supervision to bring about the satisfactory completion of the job the general contractor owes no duty to assure the safety of the subcontractor's employees and is not liable, therefore, for the subcontractor's torts. In short, there is no vicarious liability. Labor Code sections 6400 and 6401, requiring employers to provide a safe place to work, do not change the rule. (*Kuntz* v. *Del E. Webb Constr. Co.*, 57 Cal.2d 100, 106 [18 Cal.Rptr. 527, 368 P.2d 127]; *McDonald* v. *Shell Oil Co.*, 44 Cal.2d 785 [285 P.2d 902]; *Johnson* v. *Cal-West Constr. Co.*, 204 Cal.App.2d 610, 613 [22 Cal.Rptr. 492]; Rest. 2d Torts, sec. 409; *Hard* v. *Hollywood Turf Club*, 112 Cal. App.2d 263, 266 [246 P.2d 716]; Prosser, Law of Torts (3d ed.) p. 480.)

This does not mean that where the general contractor himself is negligent he is not liable. The contrary is true. (Prosser, *op.cit.*, p. 481.) But a necessary element of legal negligence is a duty of care. ■ Therefore the general contractor is liable only when he has assumed and has violated such a duty. We will discuss this below.

■ There are various situations in which a duty of care does exist, e.g., where an owner-general contractor employs an independent subcontractor to do work *which the general contractor should recognize as likely to create, during its progress, a peculiar, unreasonable risk of physical harm to* others, including employees of the independent subcontractor *unless special precautions are taken,* the general contractor owes a duty of care to see that such precautions are taken by the subcontractor. (*Woolen* v. *Aerojet General Corp.*, 57 Cal.2d 407, 410 et seq. [20 Cal.Rptr. 12, 369 P.2d 708]; Rest.2d Torts, § 413, 416, 427.) Plaintiff's reliance upon this rule is misplaced. There was here no unreasonable risk of physical harm nor need of special precautions within the meaning of the rule. It is stated by Prosser (*op. cit.*, p. 486) "the principle [of inherently dangerous activities—unreasonable risk of physical harm—need for special precautions] seems to be limited to work in which there is a high degree of risk in relation to the particular surroundings, or some rather specific risk or set of risks to those in the vicinity, *recognizable in advance* as calling for definite precautions. The emphasis is upon the 'peculiar' character of the risk, and *the need for special, unusual care.* One who hires a trucker to

transport his goods must, as a reasonable man, always realize that if the truck is driven at an excessive speed, or with defective brakes, some collision or other harm to persons on the highway is likely to occur. But this is not 'inherent danger,' as the courts have used the term; and for such more or less usual negligence the employer will not be liable." (Italics supplied.) We are not informed and plaintiff does not attempt to enlighten us just what or whose negligence was involved in the jerking up of the hinge plate and the cutting of the plywood "float." That it was an ordinary act of negligence, one for which some employee or employees of the subcontractor was responsible, one arising during the course of the job and not recognizable in advance by Atkinson as a casualty inherent to the work subcontracted for, we have no doubt.

Plaintiff also relies upon a rule sometimes referred to as the "nondelegable duty" rule under which a general contractor is sometimes held liable to injured third parties or to employees of his subcontractors *under special situations* for the negligence of the subcontractor. The special situations sometimes arise by statute, by common law, by franchise and by contract. Regarding the rationale of this rule, it is stated by Prosser (*op. cit.*) at page 484: 'It is difficult to suggest any criterion by which the non-delegable character of such duties may be determined, other than the conclusion of the courts that the responsibility is so important to the community that the employer should not be permitted to transfer it to another."

The California case law cited by plaintiff is *Delgado* v. *W. C. Garcia & Associates,* 212 Cal.App.2d 5 [27 Cal.Rptr. 613], and *Snyder* v. *Southern Cal. Edison Co.* (1955) 44 Cal.2d 793, 799-800 [285 P.2d 912], to the latter stated of which cases the former refers and upon which it places strong reliance. The facts of those two cases point up the features distinguishing them from this appeal. In *Delgado* appellant was the owner of a subdivision which had contracted with a city to install a sewer system within the subdivision. It subcontracted the work to another. One employee of the subcontractor was killed, another injured, when an unshored excavation built in violation of Industrial Accident Commission rules caved in. The court held the owner-general contractor (who, it will be noted, was a *special permittee* of the city being specially allowed to build a subdivision with sewer facilities) was liable notwithstanding it had not personally contributed to the

injury. Heavily relied upon was the *Snyder* case. There the owner-general contractor was a power company holding a franchise for the manufacture, sale and distribution of electricity to the public. *Delgado* quotes (on p. 8 of 212 Cal.App. 2d) from *Snyder* (at p. 799 of the latter) as follows: " 'Where an activity involving possible danger to the public is carried on *under public franchise or authority* the one engaging in the activity may not delegate to an independent contractor the duties or liabilities imposed on him by the public authority [citations] and generally speaking there are many situations in which the person cannot absolve himself from liability by delegating his duties to an independent contractor. (27 Am.Jur., Independent Contractors, §§ 48-50; 23 A.L.R. 985; 29 id. 736; 20 A.L.R.2d 868; Rest., Torts, §§ 410-429; Prosser on Torts, p. 486 et seq.; Harper, Law of Torts (1933) § 292.). . . .' " (Italics supplied.) Plaintiff argues the "nondelegable liability" rule applies in every case in which the owner-general contractor contracts with the sovereign or some public agency exercising governmental as distinguished from discretionary powers. We see no reason why it should. So to hold would be to create an extension of the exceptions to the general rule of nonliability and would effectually make the owner-general contractor an insurer providing employees of subcontractors double coverage. Such employees already receive workmen's compensation, and, generally speaking, workmen's compensation benefits are those which the state seeks to afford every workman. Why should the employee of the independent contractor recover benefits greater than the employee of the general contractor? True, case law has made him the beneficiary of a windfall and the owner-general contractor the insurer of payment of that windfall in the "nondelegable liability" cases. Thus far the rule has been limited to the "franchise," "permittee," "extrahazardous situation" and other "special relationship" cases, or the liability has been written into some statute. We see no logical reason to enlarge the existing liability by case law.

Plaintiff contends that in this case, even if a "nondelegable liability" would not have existed otherwise it existed by virtue of the provisions of certain safety orders contained in the California Administrative Code (8 Cal. Admin. Code, §§ 1511, 1611, 1670 and 4000) regarding slings and safety belts. But plaintiff points out no respect in which any of these safety orders were violated. Plaintiff also argues a "nondele-

gable liability'' was created under the provisions of Atkinson's contract with the state. He refers to special provisions of the contract. Section 7-1.09 provides that "the contractor shall comply with all applicable Federal, State, and local laws governing safety . . . [and] shall provide all safeguards, safety devices and protective equipment and take any other needed actions, on his own responsibility . . . reasonably necessary to protect the life and health of employees on the job and the safety of the public. . . ." Standard provisions of the Department of Public Works (1960) were referred to and made a part of the contract. They contain provisions similar to those set forth above. Section 8-1.01 also provides the contractor is to give "his personal attention to the fulfillment of the contract and shall keep the work under his control. No subcontractor will be recognized as such, and all persons engaged in the work of construction will be considered as employees of the Contractor and he will be held responsible for their work, which shall be subject to the provisions of the contract and specifications."

We read these provisions as intending to underline the fact that Atkinson, by subcontracting, was not to be relieved of any obligation owed to the state and the public. The state did not intend by said provisions to enlarge Atkinson's liability or create a third-party-beneficiary contract (see Civ. Code, § 1559) to the end that the subcontractor's employees would enjoy the right to a common law action at law in addition to their right to workmen's compensation benefits. No safety law, rule or regulation is alleged or pointed out to have been violated by Atkinson; no breach of duty other than the postulated one the discussion above has shown to be inapplicable was even urged. The declarations, affidavits and depositions, all undisputed as to their content, show there was no duty of care, direct or vicarious, owed or violated. The trial court therefore properly held there was no triable issue of fact.

The judgment is affirmed.

Friedman, J., and Regan, J., concurred.

A petition for a rehearing was denied June 22, 1967.