[No. D021304. Fourth Dist., Div. One. Apr. 9, 1997.]

FERNANDO LOPEZ, Plaintiff and Appellant, v.
UNIVERSITY PARTNERS et al., Defendants and Respondents.

STATE COMPENSATION INSURANCE FUND, Plaintiff v.
JWP MECHANICAL SERVICES et al., Defendants.

**COUNSEL**

Bernard R. Lafer for Plaintiff and Appellant.

Fredrickson, Mazeika & Grant, Dennis W. Fredrickson and Peter S. Gregorovic for Defendants and Respondents.

**OPINION**

**JONES, J.***—Plaintiff Fernando Lopez appeals a summary judgment in favor of defendants University Partners (University) and JWP Mechanical Services (JWP). Lopez sued University and JWP for personal injuries he sustained as a result of the collapse of a trench in which he was working for his employer, Ace Excavating Company (Ace). JWP hired Ace to do excavation work on the subject property, which was owned by University and leased by JWP. The court concluded University and JWP were not liable to Lopez because under *Privette* v. *Superior Court* (1993) 5 Cal.4th 689 [21 Cal.Rptr.2d 72, 854 P.2d 721], an owner who hires an independent contractor cannot be held vicariously liable under the peculiar risk doctrine for injuries suffered on the job by the contractor's employees. The court further found Lopez failed to present evidence raising a material issue of fact as to whether University and JWP breached a duty owed to Lopez.

Although Lopez's issues on appeal are not clearly delineated, he essentially contends: (1) *Privette* does not bar his action against JWP because JWP

---

*Judge of the San Diego Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

was a lessee rather than owner of the subject construction site and was acting as a general contractor at the site; (2) University and JWP owed him a nondelegable duty to provide a reasonably safe workplace on the construction site over which it had control; (3) University owed him a nondelegable duty to exercise due care on the construction site because the trench excavation was an ultrahazardous activity; and (4) JWP's failure, as general contractor, to comply with statutory regulations adopted under the Labor Code constituted negligence per se. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

University was the owner of the property on which Lopez's accident occurred. In 1985, University leased the property to University Mechanical and Engineering Contractors, Inc. At the time of the accident, JWP was the lessee in possession of the property as successor in interest to University Mechanical and Engineering Contractors, Inc.

JWP contracted with Ace, Lopez's employer, to excavate and remove underground storage tanks on the leased premises. Lopez was injured when the walls of the excavation pit in which he was working collapsed. Lopez received workers' compensation for his injuries from State Compensation Insurance Fund (SCIF), Ace's workers' compensation carrier.

In April 1993, SCIF filed a subrogation action against JWP and Lopez filed a personal injury action against University and JWP. In July 1993, the two cases were consolidated by stipulation of the parties.

University and JWP moved for summary judgment against Lopez and SCIF on the ground workers' compensation provided the exclusive remedy for Lopez's injuries under *Privette* v. *Superior Court, supra*, 5 Cal.4th 689. After oral argument on the motion, which was opposed by Lopez but not by SCIF, the court ruled Lopez could not recover under a peculiar risk theory but was not foreclosed from pursuing a claim for general negligence.

University and JWP then moved for reconsideration. The court granted their request for reconsideration and ultimately granted their motion for summary judgment on the grounds *Privette* precluded Lopez from recovering under a peculiar risk theory and Lopez presented no evidence to support a general negligence claim.

## DISCUSSION

■ On appeal from a ruling on a motion for summary judgment, the appellate court conducts its own independent review of the moving and

opposition papers and applies the same standard as the trial court in determining whether the motion was properly granted. (*California Aviation, Inc.* v. *Leeds* (1991) 233 Cal.App.3d 724, 730-731 [284 Cal.Rptr. 687].)

Code of Civil Procedure section 437c, subdivision (o)(2) sets forth a defendant's burden of proof in moving for summary judgment or summary adjudication as follows: "A defendant or cross-defendant has met his or her burden of showing that a cause of action has no merit if that party has shown that one or more elements of the cause of action, even if not separately pleaded, cannot be established, or that there is a complete defense to that cause of action. Once the defendant or cross-defendant has met that burden, the burden shifts to the plaintiff or cross-complainant to show that a triable issue of one or more material facts exists as to that cause of action or a defense thereto. The plaintiff or cross-complainant may not rely upon the mere allegations or denials of its pleadings to show that a triable issue of material fact exists but, instead, shall set forth the specific facts showing that a triable issue of material fact exists as to that cause of action or a defense thereto."

## I. *Applicability of Privette*

"Under the peculiar risk doctrine, a person who hires an independent contractor to perform work that is inherently dangerous can be held liable for tort damages when the contractor's negligent performance of the work causes injuries to others. By imposing such liability without fault on the person who hires the independent contractor, the doctrine seeks to ensure that injuries caused by inherently dangerous work will be compensated, that the person for whose benefit the contracted work is done bears responsibility for any risks of injury to others, and that adequate safeguards are taken to prevent such injuries." (*Privette* v. *Superior Court, supra,* 5 Cal.4th at p. 691.)

In *Privette*, the California Supreme Court sharply limited liability under the doctrine of peculiar risk, holding that "[w]hen . . . the injuries resulting from an independent contractor's performance of inherently dangerous work are to an employee of the contractor, and thus subject to workers' compensation coverage, the doctrine of peculiar risk affords no basis for the employee to seek recovery of tort damages from the person who hired the contractor but did not cause the injuries." (*Privette* v. *Superior Court, supra,* 5 Cal.4th at p. 702.)

Lopez contends *Privette* does not bar his action against JWP because JWP did not hire Ace as an "owner" of the subject construction site, but rather as

a general contractor. Lopez suggests *Privette* does not apply when the person hiring the independent contractor is a general contractor instead of an owner.

We note the language of the holding in *Privette* is not limited to *owners*. Rather, the high court's holding excludes from peculiar risk liability "*the person who hired the contractor* but did not cause the [contractor's employee's] injuries." (*Privette* v. *Superior Court, supra,* 5 Cal.4th at p. 702, italics added.) The "person who hired the contractor" could be an owner, a lessee or a general contractor.[1] Be that as it may, we need not decide whether *Privette* shields general contractors from liability for injuries to employees of subcontractors any less than owners, as there is no admissible evidence in the record that JWP was acting as a general contractor when it hired Ace to remove underground storage tanks from its leasehold property.

In support of their motion for summary judgment, University and JWP submitted evidence showing, among other things, that JWP occupied the subject premises as successor in interest to University Mechanical and Engineering Contractors, Inc., who leased the property from University; JWP hired Ace to excavate the area from which the underground storage tanks were to be removed; and JWP relinquished all control over the excavation worksite to Ace.

Nothing on the face of the written contract between Ace and JWP suggests it was a subcontract with Ace for the performance of JWP's obligations under a general contract between JWP and some third party. The contract refers to JWP as "owner." Ace agreed to perform all labor and supply all materials and equipment necessary to complete the work described in the contract, i.e., the excavation and removal of three underground fuel storage tanks. The excavation and tank removal to be performed by Ace constituted the entire project; nothing in the contract suggests the work was part of some greater overall project.

In his statement of disputed facts submitted in opposition to JWP and University's motion for summary judgment, Lopez contended both JWP and University were acting as general contractors when he was injured. As supporting evidence, Lopez cited his complaint and the declaration of JWP

---

[1]We note the California Supreme Court has granted review in at least two cases to decide the extent of a general contractor's liability to a subcontractor's employees after *Privette*. (*Toland* v. *Sunland Housing Group, Inc.* (1995) 49 Cal.App.4th 212 [47 Cal.Rptr. 373] review granted March 14, 1996 (S050870) [argument limited to the issue of whether, after *Privette*, a subcontractor's employee has a cause of action for direct liability against a general contractor or developer]; *Voigts* v. *Brutoco Engineering & Construction Co.* (1996) 49 Cal.App.4th 354 [57 Cal.Rptr.2d 87] review granted Dec. 11, 1996 (S056914) [cause ordered held pending disposition of *Toland* v. *Sunland Housing Group, Inc.*].)

employee Ronald Florence, which JWP and University filed in support of their motion.

Lopez's supporting evidence is insufficient to raise a triable issue of fact as to whether JWP or University was acting as a general contractor. As noted, mere allegations in pleadings are insufficient to show the existence of a triable issue of fact. (Code Civ. Proc., § 437c, subd. (o)(2).) The only averment in Florence's declaration that remotely supports Lopez's contention is Florence's statement on information and belief that Ace "had a valid subcontractors license . . . ." The point of this statement obviously is that Ace was a licensed *contractor,* as there is no such thing as a *subcontractor's* license distinct from a *contractor's* license.[2] Florence's statement sheds no light on whether Ace was a subcontractor on the subject excavation project.

In supplemental opposition to the motion for summary judgment, Lopez submitted his own declaration in which he stated, on information and belief, that "JWP or [University] had retained the services of another subcontractor to remove the tanks that had formerly been buried in the excavation site, which would indicate that JWP was, in fact, acting as a general contractor and hiring other subcontractors like Ace to do whatever work was required." Lopez also submitted the declaration of his construction expert, John W. Elliott, who stated: "On information and belief, I believe that JWP was the general contractor on this job and was licensed as such under California law, having license number 583829."

These declarations are insufficient to raise a triable issue of fact as to whether JWP or University was acting as a general contractor with respect to the subject excavation project. Declarations in support of or opposition to a motion for summary judgment or adjudication "shall be made by any person *on personal knowledge,* shall set forth admissible evidence, and *shall show affirmatively that the affiant is competent to testify to the matters stated in the affidavits or declarations.*" (Code Civ. Proc., § 437c, subd. (d), italics added.) ▆ Declarations based on information and belief are insufficient to satisfy the burden of either the moving or opposing party on a motion for summary judgment or adjudication. (*Bowden* v. *Robinson* (1977) 67 Cal.App.3d 705, 719-720 [136 Cal.Rptr. 871]; *Overland Plumbing, Inc.* v. *Transamerica Ins. Co.* (1981) 119 Cal.App.3d 476, 483 [174 Cal.Rptr. 1].) ▆ Thus, the declarations of Lopez and Elliott on information and belief are insufficient to satisfy Lopez's burden under Code of Civil Procedure

---

[2] A contractor can be licensed as a general contractor or a "specialty contractor." (Bus. & Prof. Code, §§ 7055-7058.) While specialty contractors commonly perform their services under subcontracts with general contractors, they are not precluded from contracting directly with owners and/or possessors of real property.

section 473c, subdivision (o)(2) of showing the existence of a triable issue of fact as to whether University or JWP acted as a general contractor in hiring Ace, rather than as owner or lessor.[3]

Lopez also contends the holding in *Privette* did not cover lessees of property because there are different duties and obligations imposed upon owners as compared to lessees of property. However, Lopez does not support this assertion with any further argument or citation to authority. He does not explain, nor can we think of any reason why, under the reasoning of *Privette*, a lessor in possession of real property who hires an independent contractor to perform inherently dangerous work should be any less immune from liability under the peculiar risk doctrine than an owner.

In short, University and JWP's evidentiary showing that *Privette*'s limitation on peculiar risk liability applies to the instant case was sufficient to shift the burden to Lopez to show the existence of a triable issue of fact as to the applicability of *Privette*. As Lopez was unable to meet that burden, the court properly ruled that Lopez could not recover under the peculiar risk doctrine as a matter of law.

## II. *Nondelegable Duty to Provide a Reasonably Safe Workplace*

Lopez contends University and JWP owed him a nondelegable duty to provide him a safe workplace on the construction site over which it had control under Labor Code section 6304,[4] the Restatement Second of Torts section 414 and the common law. Section 414 of the Restatement Second of

---

[3] That JWP happened to be a licensed contractor is not evidence that it acted as a general contractor in hiring Ace to remove storage tanks from its property.

[4] Labor Code section 6304 provides: " 'Employer' shall have the same meaning as in Section 3300."

Labor Code section 3300 provides: "As used in this division, 'employer' means:

"(a) The State and every State agency.

"(b) Each county, city, district, and all public and quasi public corporations and public agencies therein.

"(c) Every person including any public service corporation, which has any natural person in service.

"(d) The legal representative of any deceased employer."

Before 1971, Labor Code section 6304 provided: " 'Employer' shall have the same meaning as in section 3300 *and shall also include every person having direction, management, control, or custody of any employment, place of employment, or any employee.*" (Italics added.) However, a 1971 amendment of the statute deleted the italicized language. (See Historical Note, 45 West's Ann. Lab. Code (1989 ed.) § 6304, p. 251; *Spencer* v. *G. A. MacDonald Constr. Co.* (1976) 63 Cal.App.3d 836, 847, fns. 5, 7 [134 Cal.Rptr. 78].)

It is unclear why Lopez cited Labor Code section 6304, as its present definition of employer clearly excludes JWP and University. Presumably, Lopez cited the statute for its pre-1971 definition of "employer" under which a general contractor or owner who retains control over a subcontractor's work could be deemed an employer of the subcontractor's

Torts provides: "One who entrusts work to an independent contractor, but retains the control of any part of the work, is subject to liability for physical harm to others for whose safety the employer owes a duty to exercise reasonable care, which is caused by his failure to exercise his control with reasonable care." (Rest.2d Torts, § 414, p. 387.)

Similarly, Lopez cites various cases which support the proposition that an owner or general contractor may be held liable for injuries to an employee of a subcontractor where the owner or general contractor retained sufficient control over the subcontractor's work to be able to prevent or eliminate, through the exercise of reasonable care, the dangerous condition causing the employee's injuries. (E.g., *Kuntz* v. *Del E. Webb Constr. Co.* (1961) 57 Cal.2d 100, 104-107 [18 Cal.Rptr. 527, 368 P.2d 127]; *Morehouse* v. *Taubman Co.* (1970) 5 Cal.App.3d 548, 557 [85 Cal.Rptr. 308]; *Jean* v. *Collins Construction Co.* (1963) 215 Cal.App.2d 410, 415-416 [30 Cal.Rptr. 149].)

The authority cited by Lopez does not compel us to reverse the summary judgment against him, as it imposes a duty to provide a safe workplace only on a worker's immediate employer or those who contract for the services of the immediate employer, but retain sufficient control over the work to justly be held responsible for unsafeness in the workplace. There is no evidence in the record that JWP or University fell into either category. It is undisputed that Lopez's employer at the time of the accident was Ace, not University or JWP. In his aforementioned declaration, JWP employee Florence declared he entered into the contract with Ace and "expressly relinquished control of the work site to [Ace]." As noted, the contract between Ace and JWP was for excavation of underground tanks to be performed solely by Ace. This evidence was sufficient to shift the burden to Lopez to show there is a triable issue of fact as to whether JWP and/or University retained sufficient control over Ace's work to be held responsible for the unsafe condition of the excavation pit in which Lopez was injured. Lopez submitted no evidence showing the existence of such a triable issue of fact.

### III.   *Nondelegable Duty Regarding Ultrahazardous Activity*

Lopez contends University owed him a nondelegable duty to exercise due care on the construction site because the trench excavation was an ultrahazardous activity.[5] This contention is without merit as it is merely another way of arguing that University is liable under the peculiar risk doctrine.

---

employees (see, e.g., *Widman* v. *Rossmoor Sanitation, Inc.* (1971) 19 Cal.App.3d 734, 748 [97 Cal.Rptr. 52]). We note Lopez refers to the pre-1971 definition of employer in Labor Code section 6304 on page 14 of his opening brief.

[5]Lopez inexplicably directs this argument only to University, and not JWP.

Lopez bases his ultrahazardous condition argument on *Delgado* v. *W. C. Garcia & Associates* (1963) 212 Cal.App.2d 5 [27 Cal.Rptr. 613] and *Widman* v. *Rossmoor Sanitation, Inc., supra,* 19 Cal.App.3d 734. Neither of these cases makes any distinction between "ultrahazardous" work and "inherently dangerous" work involving a peculiar risk of harm. The term "ultrahazardous" does not even appear in the *Delgado* opinion and is used only once in *Widman* in passing reference to deep excavation work, which otherwise is referred in the opinion as "inherently dangerous." (*Widman* v. *Rossmoor Sanitation, Inc., supra,* 19 Cal.App.3d at pp. 745-746.)

In *Delgado,* the defendant was the owner and subdivider of the subject development property as well as the general contractor on the project. In its contract with the City of San Jose to build the sewer system for the development, the defendant agreed to comply with safety orders requiring certain precautions against the caving in of ditches. (*Delgado* v. *W. C. Garcia & Associates, supra,* 212 Cal.App.2d at pp. 6-7.) The defendant in *Delgado* was sued for the wrongful death of one of the employees of the subcontractor hired to do the sewer work and the personal injuries sustained by another as a result of the collapse of a sewer trench. Appealing a jury verdict in favor of the plaintiffs, the defendant contended the court erred in giving certain jury instructions about safety orders and Labor Code sections requiring employers to provide a safe workplace. The defendant cited the rule that ". . . where an owner or general contractor does nothing more with respect to the work done by an independent contractor than exercise general supervision and control to bring about its satisfactory completion, it is not its responsibility to assure compliance with all applicable provisions of the Labor Code, including those relating to the manner in which the independent contractor performs the operative details of his work." (*Id.* at p. 7.)

The *Delgado* court rejected this argument because the defendant had expressly agreed in its contract with the city to comply with the applicable safety orders. The court concluded the defendant's contractual duty to comply with the safety orders was nondelegable in accordance with the rule that " '[w]here an activity involving possible danger to the public is carried on under public franchise or authority the one engaging in the activity may not delegate to an independent contractor the duties or liabilities imposed on him by the public authority . . . .' " (*Delgado* v. *W. C. Garcia & Associates, supra,* 212 Cal.App.2d at p. 8, quoting *Snyder* v. *Southern Cal. Edison Co.* (1955) 44 Cal.2d 793, 799-800 [285 P.2d 912].)

*Delgado* is inapposite because it involved an owner who was also the general contractor, and who agreed in a *public* contract to assume

responsibility for the safety of the subject excavation work. Here, neither JWP nor University contractually assumed such responsibility, nor did they otherwise retain any control over Ace's excavation work. *Delgado* does not support the proposition that when a property owner hires an independent contractor to perform inherently dangerous or "ultrahazardous" work on his or her property, the duty to take reasonable safety precautions in connection with that work is in all cases nondelegable and, therefore, shared by the property owner and the independent contractor. That proposition is inconsistent with *Privette*'s holding that when an employee of an independent contractor performing inherently dangerous work is injured on the job, and thus subject to workers' compensation coverage, the employee may not seek recovery under the peculiar risk doctrine from the person who hired the independent contractor but did not cause the injuries. (*Privette* v. *Superior Court, supra,* 5 Cal.4th at p. 702.)

*Widman* is also distinguishable. In that case, as in *Delgado,* one worker was killed and another injured when a sewer trench caved in. The workers were employed by an independent contractor hired by a subsidiary of the developer of a residential construction project to do excavation work and install sewer lines on the project. The developer's subsidiary who hired the excavation contractor was the record owner of the property and was in charge of the installation of sanitation facilities for the development. (*Widman* v. *Rossmoor Sanitation, Inc., supra,* 19 Cal.App.3d at p. 738.) Appealing the judgment on a jury verdict in favor of the plaintiffs, the property owner/subsidiary urged the appellate court to apply the general rule that one who employs an independent contractor is not vicariously liable for injury or death to third parties resulting from the negligence of the independent contractor. (*Id.* at pp. 742-743.)

The *Widman* court affirmed the judgment based on two exceptions to that general rule. First, it concluded excavation of a trench 14 feet deep was an inherently dangerous activity creating a peculiar risk of harm, and therefore the property owner was vicariously liable under the peculiar risk doctrine. (*Widman* v. *Rossmoor Sanitation, Inc., supra,* 19 Cal.App.3d at pp. 745-748.) Second, the court concluded that independent of the property owner's vicarious liability under the peculiar risk doctrine, the jury reasonably could have found the property owner retained sufficient control over the excavation work "to bring it within the rule that an owner of land who reserves control of the premises is an *employer* within the meaning of [former] section 6304 of the Labor Code[6] and subject to the duty to provide a safe place of employment [citations], and that having assumed such control, it had the

---

[6]See *ante,* footnote 4.

responsibility for the enforcement of the safety order requiring the shoring of [the trench]. [Citation.]" (*Id.* at p. 748.)

In short, *Widman* concluded the property owner was properly held liable under the peculiar risk doctrine and because it retained control over the independent contractor's work. *Widman* does not help Lopez because its pre-*Privette* application of the peculiar risk doctrine is now precluded by *Privette,* and there is no evidence in the record that JWP or University retained any control over the excavation work it hired an independent contractor to perform, as did the property owner in *Widman.*

We are aware of no distinction in case law between inherently dangerous and ultrahazardous activities. To hold University and/or JWP liable for Lopez's injuries on the theory they owed Lopez a nondelegable duty to exercise due care for his safety merely because he was engaged in an ultrahazardous or inherently dangerous activity would be to impose liability under the doctrine of peculiar risk contrary to the holding in *Privette.*[7]

---

[7]At oral argument counsel for Lopez cited *Felmlee* v. *Falcon Cable TV* (1995) 36 Cal.App.4th 1032 [43 Cal.Rptr.2d 158] and *Srithong* v. *Total Investment Co.* (1994) 23 Cal.App.4th 721 [28 Cal.Rptr.2d 672] as support for his argument that JWP and/or University owed Lopez a nondelegable duty because he was engaged in ultrahazardous activity. Neither case supports his position. *Felmlee* held that while "the doctrine of 'nondelegable duties' survives *Privette*[,] . . . [an injured employee of a subcontractor] may not state a cause of action [against the general contractor] unless he can allege the breach of a specific nondelegable duty." (*Felmlee* v. *Falcon Cable TV, supra,* 36 Cal.App.4th at p. 1035.) *Felmlee* did not involve a claim of nondelegable duty based on ultrahazardous activity, but rather a claim of nondelegable duty imposed by statute. *Felmlee* noted "[n]ondelegable duties may arise when a statute provides specific safeguards or precautions to insure the safety of others[,]" (*id.* at p. 1038) but concluded the municipal ordinance relied on by the plaintiff worker did not give rise to a nondelegable duty because it did not concern specific safeguards. (*Id.* at p. 1039.) *Felmlee* is not authority for the proposition that an owner (or general contractor) owes a nondelegable duty to the employees of a contractor or subcontractor hired to perform an ultrahazardous activity.

Nor did *Srithong* involve a claim of nondelegable duty based on ultrahazardous activity. *Srithong* noted the rule that ". . . a landlord cannot escape liability for failure to maintain property in a safe condition by delegating such duty to an independent contractor. [Citations.]" (*Srithong* v. *Total Investment Co., supra,* 23 Cal.App.4th at p. 726.) The nondelegable duty rule articulated in *Srithong* does not apply here, as the instant case does not involve breach of a landlord's general duty to maintain safe premises so as to not subject tenants and other foreseeable plaintiffs to unreasonable risks of harm from defects in the premises of which the landlord knew or should have known. JWP did not hire Ace to put or maintain the subject premises in a safe condition; it hired Ace to excavate storage tanks. The dangerous condition that injured Lopez did not exist until Ace itself created it by negligently performing its excavation contract. Moreover, the landlord here was not JWP, who hired Ace, but University. There is no evidence that Lopez was injured by an unsafe condition which University, as landlord, had a duty to prevent.

## IV. *Negligence Per Se*

■ Finally, Lopez contends JWP's failure to comply with safety orders adopted pursuant to the Labor Code[8] constitutes negligence per se, and that Labor Code sections 6400, 6401 and 6403 (generally requiring employers to provide employees a safe workplace) required JWP, as general contractor, to maintain the trenches in which Lopez was working in a reasonably safe condition.

This argument lacks merit. There is no evidence in the record that JWP was either Lopez's employer, as that term is defined by Labor Code sections 6304 and 3300, or even a general contractor with respect to Ace's excavation work. Under Labor Code section 6304.5, violations of regulations and safety orders promulgated under CAL/OSHA can have no "application to . . . nor be admissible into, evidence in any personal injury or wrongful death action . . . *except as between an employee and his own employer.*" (Lab. Code, § 6304.5, italics added; *Spencer* v. *G. A. MacDonald Constr. Co., supra,* 63 Cal.App.3d 836, 857-858; *Felmlee* v. *Falcon Cable TV, supra,* 36 Cal.App.4th at p. 1039.) Since there is no evidence in the record that JWP was Lopez's employer, JWP is not subject to negligence per se liability based on any failure to comply with CAL/OSHA safety orders.

### DISPOSITION

The judgment is affirmed.

Work, Acting P. J., and McIntyre, J., concurred.

---

[8]The safety-related statutes referred to by Lopez are part of the California Occupational Safety and Health Act of 1973 (CAL/OSHA) set forth as Labor Code section 6300 et seq.