[Civ. No. 15213. Fourth Dist., Div. Two. Nov. 16, 1976.]

LESTER SPENCER, Plaintiff and Appellant, v.
G. A. MacDONALD CONSTRUCTION COMPANY,
Defendant and Respondent.

838

**COUNSEL**

Hews & Munoz, Hews, Munoz & Robinson, Arthur N. Hews and Gerald H. B. Kane, Jr., for Plaintiff and Appellant.

Robert E. Cartwright, Edward I. Pollock, Leroy Hersh, David B. Baum, Robert G. Beloud, Ned Good, Arne Werchick, Stephen I. Zetterberg, Roger H. Hedrick, Leonard Sacks and Robert Steinberg as Amici Curiae on behalf of Plaintiff and Appellant.

Kinkle, Rodiger & Spriggs and Eleanore M. Weaver for Defendant and Respondent.

## OPINION

McDANIEL, J.—Plaintiff filed suit against the defendant for severe and permanent personal injuries suffered in a fall from a scaffold while employed as an apprentice roofer by a subcontractor at a residential construction project on which defendant was the general contractor. The jury found for defendant and judgment was entered accordingly. Plaintiff appeals from the judgment.

### FACTS

Defendant was the general contractor at the Huntington Harbor Estates, a residential construction project at Huntington Beach, California. At the time of his injuries, plaintiff, then 36, was an apprentice shingler with approximately 10 days experience and employed by the roofing subcontractor, Whitcomb Roofing Company.

According to the plaintiff, the general procedure used in roofing on this particular job was as follows. The carpenters' last task before the roofers began their work was to nail sheeting to the two-inch by eight-inch rafters. This sheeting was one-inch by eight-inch rough lumber which was normally spaced four to six inches apart. However, where there was an overhang, the sheeting was not spaced, and the carpenters were required to cover the overhang with solid sheeting. When the carpenters completed the sheeting, it was the roofers' job to nail the shingles to the sheeting. This was done by starting at the lowest point on the roof (here the edge of the overhang) and working up the 45-degree slope to the top. The area from the edge of the overhang up to a line about two feet from it was shingled from a scaffolding because of the difficulty of working the edge while actually on the roof.

According to the defendant, before the plaintiff was employed at the project, the general contractor had insisted that all of the shinglers be furnished with safety belts and lines. Plaintiff at all times was furnished with a safety belt and a line which was approximately eight to ten feet long and known as the "short line." It was the testimony of his foreman that plaintiff had been instructed on how to use the line and, particularly,

had been told how to attach the line to a rafter. The foreman testified that all the roofers used safety lines on the job and that no one was to begin work until equipped with safety belts and lines. According to the defendant, the plaintiff stated at his deposition that on at least one prior occasion he had used a safety line by attaching it to a rafter.

After finishing work on another building on the day of his injury, plaintiff joined his friend and coworker, Wayne Harless, at the unit where it occurred. The two men took a coffee break and then began work. Because plaintiff was to shingle the area just up from the unit's overhang, scaffolding was used. The scaffolding, known as a ladder jack scaffold, consisted of two aluminum ladders, each with adjustable aluminum jacks; the ladders were placed several feet apart. A walkboard 10 to 12 inches wide was placed between the 2 ladders; the walkboard was placed between three and one half and four feet below the unit's eaves. Before he could begin the actual shingling process, plaintiff first had to carry bundles of shingles up the walkboard and stack them there. He did this by placing the bundles on one shoulder and then climbing the ladder. Upon reaching the walkboard, plaintiff would flip the bundles onto it. After setting the bundles on the walkboard, plaintiff then stepped onto it and began to stack the bundles of shingles on the roof. As he reached for one of the remaining bundles, he inadvertently struck his hand against his unsheathed axe, and in so doing the plaintiff cut his hand. The axe was located in a loop on his nail apron which was tied about his waist.[1]

The cut suffered by plaintiff was located between two fingers. He told his partner Harless what had happened, stating that the cut was deep because he could see to his finger bones. Plaintiff then became dizzy. In his testimony he said that just before he fell, he tried "every means possible" to hook up to the building's rafters with the short line which he was wearing. His efforts, however, were unsuccessful. He next simply sat down and grabbed onto a ladder. Apparently he then fainted and fell from the scaffold. Harless testified that plaintiff fell head first, striking the ground on his neck and chest. Plaintiff regained consciousness a few minutes later and experienced severe neck pain. His injury was diagnosed as a broken neck; he is now a permanent quadriplegic.

At the time plaintiff cut his hand, he was wearing his safety belt, and his own short line was connected to the belt. However, he had not

---

[1]Plaintiff had been required to purchase a nail apron and axe. The store from which he purchased those items did not provide a safety cover for the axe.

attached this line to anything nor had he tried to adjust the jack to make the length of the line usable. Neither did plaintiff ask any fellow employees or his foreman for a longer line or for instructions on how to use his line under the conditions where he was then working. However, according to the plaintiff, the evidence also showed that there was no so-called life line available to plaintiff at the time. This line is one usually attached to the top of the roof and allowed to fall free down over the edge of the overhang. It is equipped with a positive grab or clamp which moves up or down the line. The roofer's short line is tied to the grab on the life line. Plaintiff has represented to us without benefit of citation that the Construction Safety Orders require the presence of the life line in this kind of situation.

### SYNOPSIS OF KEY TRIAL COURT RULINGS

At the trial, the plaintiff offered to prove that there were two purported violations of the Construction Safety Orders found in the California Administrative Code. One required the use of the life line as already noted. The other required the walkboard used in the ladderjack scaffold to be 14 inches wide as compared to the 12-inch width actually used here. (Cal. Admin. Code, tit. 8, § 1648.)

The theory of the defense, followed by the trial judge, derived from the provisions of section 6304.5 of the Labor Code[2] the effect of which, in this case, was to place the defendant general contractor outside the range of duty as to this plaintiff, an employee of a subcontractor. Consequently, plaintiff's offer of proof involving the Construction Safety Orders was denied by reason of the trial court's application of section 6304.5.

There were other offers of proof and efforts to cross-examine defendant's expert witnesses with reference to these safety orders; those offers and efforts were also denied. (Certain of these rulings are dealt

---

[2]Section 6304.5 of the Labor Code reads as follows:

"It is the intent of the Legislature that the provisions of this division shall only be applicable to proceedings against employers brought pursuant to the provisions of Chapter 3 (commencing with Section 6500) and 4 (commencing with Section 6600) of Part 1 of this division for the exclusive purpose of maintaining and enforcing employee safety.

"Neither this division [Div. 5] nor any part of this division shall have any application to, nor be considered in, nor be admissible into, evidence in any personal injury or wrongful death action arising after the operative date of this section, except as between an employee and his own employer."

Labor Code section 6315.5 (a part of div. 5) provides for the admissibility of safety orders.

with below as subissues in reference to plaintiff's argument for a narrow construction of section 6304.5 of the Labor Code.) Plaintiff also sought a directed verdict on the theory that violation of safety orders found in the Administrative Code was negligence per se. This motion was similarly denied. It is in this context then that the plaintiff has pursued this appeal.

### ISSUES

On appeal, plaintiff raises four issues:

1. Are Labor Code sections 6304 and 6304.5 unconstitutional?

2. If section 6304.5 is constitutional, should it be strictly construed?

3. Should the court have awarded plaintiff a directed verdict on the issue of defendant's liability?

4. Did the trial court commit error by giving certain instructions and/or by refusing others?

As will be discussed more fully below, amici curiae filed a brief on behalf of plaintiff in which they raised several subissues dealing with the constitutionality of section 6304.5.

### I

### *The Constitutionality of Labor Code Sections 6304 and 6304.5*

Plaintiff makes a two-pronged attack on the constitutionality of Labor Code sections 6304 and 6304.5. ■ . One of his arguments is that those sections violate article IV, section 9 of the state Constitution which provides in part that a statute shall "embrace but one subject, which shall be expressed in its title."[3] Plaintiff and the amici curiae in essence argue that the titles of the assembly bills which were the alleged forerunners of these sections were misnomers: while the bills (Assem.Bill No. 676 and Assem.Bill No. 676 as amended) were known as relating to workmen's compensation, the argument is made that those bills in fact

---

[3]Article IV, section 9 provides: "A statute shall embrace but one subject, which shall be expressed in its title. If a statute embraces a subject not expressed in its title, only the part not expressed is void. A statute may not be amended by reference to its title. A section of a statute may not be amended unless the section is re-enacted as amended."

related to employee safety. Plaintiff further intimates that because of the allegedly misleading titles to these bills the Legislature did not realize what it was enacting.

To determine whether the subject matter of a legislative act is sufficiently referred to in its title, we may look to the history of the particular legislation to which the act in question relates. (*McClure* v. *Riley*, 198 Cal. 23, 27 [243 P. 429].) The title of the original Assembly Bill No. 676 was "An act to amend Sections 4800, 4801, 4802, 4803, 4804, and the heading of Article 6 (commencing with Section 4800) of Chapter 2 of Part 2 of Division 4, of the Labor Code, relating to workmen's compensation." The title of Assembly Bill No. 676 as amended simply deleted reference to those sections, and in their place, substituted three others: "An act to amend Sections 3601 and 6304 of, and to add Section 6304.5 to, the Labor Code, relating to workmen's compensation."[4] Plaintiff's primary concern is with the words "relating to workmen's compensation." It is his position that the bills here in question relate to safety matters, not workmen's compensation. Consequently, Assembly Bill No. 676 as amended, and which was enacted, violated article IV, section 9 which provides in part that a "statute shall embrace but one subject, which shall be expressed in its title."

We are not persuaded by plaintiff's contention. The predecessor of article IV, section 9 was article IV, section 24. In interpreting that section California appellate courts have set forth several rules: "It is well established that the purpose of this constitutional provision is not to destroy legislation germane to the general object declared in the title but to protect against the passage of provisions foreign to the title, subject and purposes of an act; that this provision must be liberally construed to uphold legislation whose parts are reasonably germane; that the title is sufficient if the provisions of the act are germane to the subject matter expressed in the title and if the title naturally suggests to the mind the field of legislation which is included in the text of the act; and that it was never intended that the title of an act should be an index to all of its provisions. [Citations.]" (*Orange County Water Dist.* v. *Farnsworth*, 138 Cal.App.2d 518, 526 [292 P.2d 927].)

Turning to the present case, section 1 (Lab. Code, § 3601) of Assembly Bill No. 676 as amended specifically discusses the employee's right to recover

---

[4] It is this version of Assembly Bill No. 676 which was eventually enacted and, therefore, the one on which our discussion will focus.

compensation against the employer in case of the former's injury, or the employee's dependents' rights to compensation in the event of the employee's death. Section 2 (Lab. Code, § 6304) of Assembly Bill No. 676 as amended defines employer.[5] Certainly the definition of that word is germane to section 3601 to aid the employee or his dependents to determine who the employee's employer is for purposes of seeking compensation for injury or death. Moreover, the title of the bill naturally suggests the field of legislation found in section 6304. The title deals with "workmen's compensation"; what could be more relevant to that subject than the definition of employer?

Section 6304.5 (§ 3 of Assem. Bill No. 676 as amended) is also germane to the title of that bill. Section 6304.5 discusses certain causes of action between an employee and his employer. The title of the bill naturally suggests the field of legislation in section 6304.5: in a suit between an employee and his own employer, workers' compensation may be provided as a remedy for an injured employee.

The second aspect of plaintiff's two-pronged attack on the constitutionality of these sections is that in enacting those sections, the state Legislature violated rule 9 of the Joint Rules of the Legislature.[6]

Plaintiff sets forth the history of Labor Code sections 6304 and 6304.5, noting that prior to the enactment of Assembly Bill No. 676 as amended, the definition of employer in section 6304 was quite broad[7] and was held to include general contractors if they not only exercised general supervision over a job but also controlled the premises or instrumentality causing the employee's injury. (*Morgan* v. *Stubblefield,* 6 Cal.3d 606, 618 [100

---

[5]Labor Code section 6304 provides: " 'Employer' shall have the same meaning as in Section 3300."

Since 1937 Labor Code section 3300 has provided as follows:

"As used in this division, 'employer' means:

"(a) The State and every State agency.

"(b) Each county, city, district, and all public and quasi public corporations and public agencies therein.

"(c) Every person including any public service corporation, which has any natural person in service.

"(d) The legal representative of any deceased employer."

[6]Rule 9 of the Rules of the Two Houses of the California Legislature provides in pertinent part that "A substitute or amendment must relate to the same subject as the original bill, constitutional amendment, or resolution under consideration. . . ."

[7]Former section 6304 provided that " 'Employer' shall have the same meaning as in section 3300 and shall also include every person having direction, management, control, or custody of any employment, place of employment, or any employee."

Cal.Rptr. 1, 493 P.2d 465].) Plaintiff further declares that before section 6304.5 was enacted, safety orders were allowed into evidence; the violation of those orders constituted negligence per se. He then discusses the path which the original Assembly Bill No. 676 wove through the state Legislature, observing that the amendment of this bill (dealing with §§ 3601, 6304, and 6304.5 discussed above) came in the Senate—*after* the Assembly had thoroughly considered the bill. He asserts that the bill was enacted into law by people who were suffering from a delusion as to what Assembly Bill No. 676 as amended really provided: ". . . the members of both Houses and the public who had previously had contact with AB 676 would automatically believe that the bill in its amended form would be dealing with employees [*sic*] benefits under Workmen's Compensation."

What members of the state Legislature, not to mention the public, believe about any particular issue is rarely, if ever, so discernible. Nor, as defendant notes in its brief, does plaintiff support his assertion with documentation of any sort. ■ Moreover, the " '. . . motives of the legislators, considered as the purposes they had in view, will always be presumed to be to accomplish that which follows as the natural and reasonable effect of their enactments. . . The diverse character of such motives, and the impossibility of penetrating into the hearts of men and ascertaining the truth, precludes all such inquiries as impracticable and futile.' " (*County of Los Angeles* v. *Superior Court,* 13 Cal.3d 721, 726 [119 Cal.Rptr. 631, 532 P.2d 495].)

We also observe that the statutes in question have been in effect over four years. Although the Legislature presumably has had the opportunity to revise or repeal them (had they been enacted improperly), that has not happened.[8] In addition, available legislative material indicates that the Legislature knew what it was enacting when it passed Assembly Bill No. 676 as amended. According to the Final Calendar of Legislative Business which sets forth the path traveled by Assembly Bill No. 676 through the state Legislature, both houses considered the amendment to that bill. After the Senate Committee on Industrial Relations amended the bill, the bill as amended was read in the Senate on November 19, 1971, and passed. On that same day, the bill with the Senate amendments was sent to the Assembly where it was held specifically because "[c]oncurrence in Senate

---

[8]Amici curiae inform us that there have been several attempts since 1971 to repeal sections 3601, 6304, and 6304.5. However, none of those attempts, including one in the recently concluded legislative session, has met with success. See the Appendix *infra* for a listing of those bills with a short description of their fate.

amendments [was] pending." On November 22, the Senate amendments were concurred in. We, therefore, find this contention of plaintiff to be devoid of merit.

*Additional Arguments Set Forth by the Amici*

A. *Assembly Bill No. 676 and Rules of Evidence*

The brief filed by the amici curiae who support plaintiff's position sets forth a third issue dealing with this general subject matter: Assembly Bill 676 as amended "enacted a rule of evidence without amending and/or re-enacting affected sections of the California Evidence Code in direct contravention of the latter provision in Article IV Section 9, prohibiting an existing statute from being amended unless the statute is 're-enacted as amended.'" They further cite *Scott A.* v. *Superior Court,* 27 Cal.App.3d 292 [103 Cal.Rptr. 683], to support their position. There the court held that chapter 1748 of the 1971 legislative session which changed the age of majority from 21 years of age to 18 years of age and which then enumerated several statutes amended by the new law, did not affect Welfare and Institutions Code section 781. That section, dealing with the age at which one may petition the court to seal his juvenile record, was not among the statutes listed in chapter 1748. Therefore, because it had not been amended and reenacted as required by article IV, section 9 of the California Constitution, the court ruled that section 781 had not been affected by the new age of majority law.

The Evidence Code section with which amici are concerned here is section 669 which enumerates those circumstances in which failure to exercise due care will be presumed.[9] Amici note that section 669 pertains

---

[9]Evidence Code section 669 provides:

"(a) The failure of a person to exercise due care is presumed if:

"(1) He violated a statute, ordinance, or regulation of a public entity;

"(2) The violation proximately caused death or injury to person or property;

"(3) The death or injury resulted from an occurrence of the nature which the statute, ordinance, or regulation was designed to prevent; and

"(4) The person suffering the death or the injury to his person or property was one of the class of persons for whose protection the statute, ordinance, or regulation was adopted.

"(b) This presumption may be rebutted by proof that:

"(1) The person violating the statute, ordinance, or regulation did what might reasonably be expected of a person of ordinary prudence, acting under similar circumstances, who desired to comply with the law; or

"(2) The person violating the statute, ordinance, or regulation was a child and exercised the degree of care ordinarily exercised by persons of his maturity, intelligence,

to statutes, ordinances, and regulations. "The attempt, therefore, by AB 676 to engraft upon Evidence Code § 669 the exception of Cal. Adm. Code Title 8 Safety Orders without amending and re-enacting § 669 itself, amounts to a clear violation of Cal. Const. Article IV, Section 9."

We are not persuaded by this contention. ■ Assembly Bill No. 676 as amended did not attempt to change Evidence Code section 669. Rather it (through the second paragraph of § 6304.5) simply limits the applicability, consideration or admissibility of the division of which it is a part to actions between an employee and his own employer. As such, compliance with article IV, section 9 is unnecessary and *Scott A.* v. *Superior Court, supra,* 27 Cal.App.3d 292, cited by amici, is distinguishable.

B. *Effect of Assembly Bill No. 150 (CAL/OSHA)*

■ Amici next contend that when Assembly Bill No. 150, the California Occupational Safety and Health Act of 1973 (CAL/OSHA) was enacted, it effectively repealed section 6304.5 "by not re-enacting that section at the time of AB 150's enactment in October 1973." Amici then attempt to relate the legislative history of CAL/OSHA, noting that this act was California's response to the "Federal Occupational Safety and Health Act" of 1970 (42 U.S.C. § 3142-1): "In promulgating the Act, the bill's authors proceeded to repeal those sections of the Labor Code which were either outdated or in conflict with the Federal Act and to re-enact those sections containing no apparent conflict and which carried some continued relevance to the field of industrial safety. The legislature re-enacted all of the then existing sections contained in Division 5 of the Labor Code [§§ 6300 et seq.] with the conspicious [*sic*] exception of § 6304.5 . . . a legal anachronism." Amici then assert that if section 6304.5 was repealed by the enactment of CAL/OSHA, that section was not applicable to plaintiff's trial which began in September 1974. We are not persuaded by this argument.

We note at the outset that section 6304.5 was not the only provision which the Legislature did not repeal and then enact in the CAL/OSHA legislation. Section 6304 (defining employer) was also not affected. Nevertheless, the general conclusion drawn by amici—the Legislature's failure to repeal and then enact a new section indicates that the statute is a "legal anachronism" and was impliedly repealed—is not one endorsed

___

and capacity under similar circumstances, but the presumption may not be rebutted by such proof if the violation occurred in the course of an activity normally engaged in only by adults and requiring adult qualifications."

by this court. "[T]here is a presumption against repeals by implication; they will occur only where the two acts are so inconsistent that there is no possibility of concurrent operation, or where the later provision gives undebatable evidence of an intent to supersede the earlier; the courts are bound to maintain the integrity of both statutes if they may stand together. (*Warne* v. *Harkness* (1963) 60 Cal.2d 579, 588 [35 Cal.Rptr. 601, 387 P.2d 377]; *Penziner* v. *West American Finance Co.* (1937) 10 Cal.2d 160, 176 [74 P.2d 252]; *Smith* v. *Mathews* (1909) 155 Cal. 752, 758 [103 P. 199]; see *Williams* v. *Los Angeles Metropolitan Transit Authority* (1968) 68 Cal.2d 599, 603 [68 Cal.Rptr. 297, 440 P.2d 497].)" (*Sacramento Newspaper Guild* v. *Sacramento County Bd. of Suprs.*, 263 Cal.App.2d 41, 54 [69 Cal.Rptr. 480]; cited with approval in *American Friends Service Committee* v. *Procunier,* 33 Cal.App.3d 252, 260 [109 Cal.Rptr. 22].)

There is no evidence that the CAL/OSHA legislation was intended either to supersede sections 6304 or 6304.5, or is inconsistent with those provisions. Rather, these statutes appear to constitute one working unit. As set forth in Labor Code section 6300, the purpose of CAL/OSHA legislation is to assure healthy and safe working conditions for all workers within this state in part by "authorizing the enforcement of effective standards [and] assisting and encouraging employers to maintain safe and healthful working conditions. . ." Sections 6304 and 6304.5 are not inconsistent with this purpose: the former section defines "employer." Certainly that definition is necessary for an understanding of the scope of the statute's applicability. Section 6304.5 is likewise consistent with the purpose of CAL/OSHA; that statute sets forth the situations in which CAL/OSHA legislation shall be applicable, and those in which it will not be applicable.

Nor do we agree with amici's implied argument that the Legislature did not know what these statutes provided. "The courts assume that in enacting a statute the Legislature was aware of existing, related laws and intended to maintain a consistent body of statutes. (*Stafford* v. *Realty Bond Service Corp.* (1952) 39 Cal.2d 797, 805 [249 P.2d 241]; *Lambert* v. *Conrad* (1960) 185 Cal.App.2d 85, 93 [8 Cal.Rptr. 56]; 1 Sutherland, Statutory Construction (3d ed.) § 2012, pp. 461-466.)" (*Sacramento Newspaper Guild* v. *Sacramento County Bd. of Suprs., supra,* 263 Cal.App.2d 41, 54.) Certainly the Legislature read the statutes which were repealed before repealing them. It seems highly implausible that consideration would not have also been given at the same time to sections 6304 and 6304.5, both of which are relatively short. We

conclude, therefore, that the Legislature did not impliedly repeal sections 6304 and 6304.5 when it failed to repeal and then reenact those sections at the time the CAL/OSHA legislation was passed. Therefore sections 6304 and 6304.5 were applicable at the time of the trial herein.

## C. *Prior Case Law*

Amici next assert that "there exists an historical basis for the use of safety statutes in third-party civil damage tort actions." They then cite several cases in support of their argument (e.g., *De Cruz* v. *Reid,* 69 Cal.2d 217 [70 Cal.Rptr. 550, 444 P.2d 342]; *Kuntz* v. *Del E. Webb Constr. Co.,* 57 Cal.2d 100 [18 Cal.Rptr. 527, 368 P.2d 127]; *Porter* v. *Montgomery Ward & Co., Inc.,* 48 Cal.2d 846 [313 P.2d 854]; *Armenta* v. *Churchill,* 42 Cal.2d 448 [267 P.2d 303]; *Di Muro* v. *Masterson Trusafe Steel Scaffold Co.,* 193 Cal.App.2d 784 [14 Cal.Rptr. 551]; *Hyde* v. *Russell & Russell, Inc.,* 176 Cal.App.2d 578 [1 Cal.Rptr. 631]).

Once again amici's arguments have failed to persuade us. All of the cases cited by amici were decided before the operative date of both sections 6304 and 6304.5 (Apr. 1, 1972). Therefore, unless we deem either or both sections unconstitutional, and, as discussed below, we most emphatically do not, the applicability of these cases to the present matter is, at best, highly questionable.

## D. *Equal Protection / Due Process*

Amici assert in their brief that Labor Code section 6304.5 violates the equal protection and due process provisions of both the United States and California Constitutions. Amici argue first that section 6304.5 arbitrarily, irrationally, and unreasonably deprives persons such as plaintiff from "full and effective access to the courts for a resolution of their civil damage claims for negligently inflicted injuries." Amici assert that no legitimate or compelling state interest is served by this deprivation. Indeed, section 6304.5 serves to thwart the "proper social objectives of our State's safety laws. . ." Citing the Fourteenth Amendment,[10] the corresponding section of the California Constitution (art. 1,

[10]That portion of the Fourteenth Amendment cited by amici reads as follows: ". . . No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

§ 7),[11] and *Boddie* v. *Connecticut,* 401 U.S. 371 [28 L.Ed.2d 113, 91 S.Ct. 780], amici assert that "full and effective access to the courts for resolution of private disputes in civil matters is a 'fundamental interest' so as to require the court to strictly scrutinize statutes charged with unconstitutionality infringing upon that right." Amici further assert that section 6304.5 is constitutional only if a compelling state interest exists to justify its exclusion of safety orders as evidence in a civil suit brought by an employee against someone other than his own employer. They argue that because no such state interest exists (and, indeed, characterize § 6304.5 as giving immunity to "those having economic and physical control of the work site" and, consequently, "counter-productive to the compelling state interest in promoting job safety"), section 6304.5 violates federal and state equal protection guarantees. We do not agree.

"[W]here the charge is that equal protection is denied, the effect of both constitutions [the U.S. and Cal. Constitutions] is the same. ■ '[T]he test for determining the validity of a statute where a claim is made that it unlawfully discriminates against any class is substantially the same under the state prohibitions against special legislation and the equal protection clause of the federal constitution.' (*Los Angeles* v. *Southern Cal. Tel. Co.* (1948) 32 Cal.2d 378, 389, 196 P.2d 773; see also [cited cases].)" (5 Witkin, Summary of Cal. Law (8th ed. 1974) Constitutional Law, § 344, p. 3640.) Before a court will apply the "strict scrutiny" test to a statute, determination must be made that the statute deals with a "suspect classification" or with a "fundamental interest." We must next determine whether employees are a suspect classification.

Although illegitimate children (*Levy* v. *Louisiana,* 391 U.S. 68 [20 L.Ed.2d 436, 88 S.Ct. 1509]), aliens (*Graham* v. *Richardson* 403 U.S. 365 [29 L.Ed.2d 534, 91 S.Ct. 1848], and racial minorities (*Korematsu* v. *United States,* 323 U.S. 214 [89 L.Ed. 194, 65 S.Ct. 193]) have been deemed suspect classifications, employees, to date, have not. However, is the right of access for an employee to courts for a civil trial against persons other than his own employer a fundamental right? We think not.

---

[11]Article 1, section 7 of the California Constitution provides:

"(a) A person may not be deprived of life, liberty, or property without due process of law or denied equal protection of the laws.

"(b) A citizen or class of citizens may not be granted privileges or immunities not granted on the same terms to all citizens. Privileges or immunities granted by the Legislature may be altered or revoked."

Fundamental rights have been deemed to include the right to travel (*Griffin* v. *Breckenridge,* 403 U.S. 88 [29 L.Ed.2d 338, 91 S.Ct. 1790]), the right to vote (*Harper* v. *Virginia Bd. of Elections,* 383 U.S. 663 [16 L.Ed.2d 169, 86 S.Ct. 1079]), the right to procreate (*Skinner* v. *Oklahoma,* 316 U.S. 535 [86 L.Ed. 1655, 62 S.Ct. 1110]), the right to welfare benefits regardless of length of residency in a state (*Shapiro* v. *Thompson,* 394 U.S. 618 [22 L.Ed.2d 600, 89 S.Ct. 1322]), and the right of access for all citizens to courts in dissolution of marriage cases (*Boddie* v. *Connecticut, supra,* 401 U.S. 371). Although amici cite *Boddie* as authority for their proposition that access to civil courts is a fundamental right, we disagree. The *Boddie* case dealt with the State of Connecticut's preempting the dissolution of marriage field. That is, the state was, and is, the only entity having legal authority to dissolve marriages. However, not all persons could afford paying court costs and fees relative to obtaining a divorce. In that situation, the United States Supreme Court determined in *Boddie* that those individuals must also be given access to the courts.

In the absence of a fundamental interest or a suspect classification, the test used in determining the constitutionality of a statute is whether it bears a rational relationship to a state interest. " ' . . . A classification "must be reasonable, not arbitrary, and must rest upon some ground of difference having a fair and substantial relation to the object of the legislation, so that all persons similarly circumstanced shall be treated alike." ' [Citations.]" (*Brown* v. *Merlo,* 8 Cal.3d 855, 861 [106 Cal.Rptr. 388, 506 P.2d 212, 66 A.L.R.3d 505].) We are of the opinion that section 6304.5 does bear a rational relationship to a reasonable state interest.

In the case presently before us, employees are given access to courts. Division 5 of the Labor Code ("Safety in Employment") reduces or eliminates the need for the parties to resort to common law negligence to prove liability in certain cases because in those cases violations of safety orders found in the Administrative Code are admissible in evidence and could constitute negligence per se. (See, e.g., 4 Witkin, Summary of Cal. Law (8th ed. 1974) Torts, §§ 531-534, pp. 2795-2799.) However, section 6304.5 makes obvious the Legislature's intent to restrict the admissibility of those safety code orders only to safety cases (Lab. Code, § 6500 et seq. and § 6600 et seq.), and to personal injury or wrongful death cases between an employee and the party most directly concerned with his safety—his own employer. In other suits brought by the employee, he, like other personal injury litigants, must prove his case under the rules of

common law negligence. To allow the admissibility of safety code orders to carry over to the latter kind of suit would discriminate against other personal injury plaintiffs for, by reducing or eliminating the need to prove his case under common law negligence, it would place an employee in a special, protected status vis-a-vis third persons, although employees are not a suspect classification, nor is the admissibility of safety orders a fundamental right. We conclude, therefore, that section 6304.5 does not violate plaintiff's equal protection rights.

Amici next assert that the trial court's not permitting plaintiff to cross-examine certain witnesses as to specific safety orders as contained in title 8 of the California Administrative Code was a violation of his due process rights to effective cross-examination.[12] They cite several cases which declare that the right to cross-examination is a fundamental right, an improper denial of which constitutes a denial of due process. (See, e.g., *McCarthy* v. *Mobile Cranes, Inc.,* 199 Cal.App.2d 500, 506 [18 Cal.Rptr. 750].) Citing Evidence Code section 210 (defining relevant evidence), section 721 (cross-examination of an expert witness), section 355 (limited admissibility of evidence) and section 354 (effect of erroneous exclusion of evidence), amici also contend that Labor Code section 6304.5 operates as a rule of evidence and, as such, arbitrarily removes the safety orders found in the Administrative Code from consideration in a trial such as the one in this case. Consequently, "plaintiff's counsel, by being prohibited from any reference whatsoever to the applicable safety statutes was unable to expose the opinion of defendant's expert as being completely contrary to the standards set forth in the California Administrative Code."

We are not persuaded by the amici's arguments. ■ Where there is an improper denial of the right of cross-examination, due process is denied. (*McCarthy* v. *Mobile Cranes, Inc., supra,* 199 Cal.App.2d 500, 506.) Here there was no improper denial of the right of cross-examination. Labor Code section 6315.5 (div. 5) provides for the admissibility of occupational safety and health standards, orders and regulations.[13] Section 6304.5 does not allow any provision of division 5 to have any application to, or to be considered in, a personal injury or

---

[12]Plaintiff raises additional arguments dealing with the admissibility of safety orders. See our discussion of those contentions *infra* at page 857 et seq.

[13]Labor Code section 6315.5 provides in part that "All occupational safety and health standards and orders, rules, regulations, findings, and decisions of the division [the Division of Industrial Safety, per Lab. Code, § 6302, subd. (d)] made and entered pursuant to this part are admissible as evidence in any prosecution for the violation of any provision of this part, and shall, in every such prosecution, be presumed to be reasonable and lawful and to fix a reasonable and proper standard and requirement of safety . . . ."

wrongful death action except one between an employee and his own employer and proceedings brought pursuant to Labor Code sections 6500 et seq. and 6600 et seq. Consequently, at the time of trial the trial judge would not allow anyone to refer to safety orders in front of the jury. To further prevent the possibility of the orders coming before the jury, he in chambers, admonished witnesses who might want to mention safety orders in their testimony not to do so.[14] We do not believe that plaintiff was denied effective cross-examination; the trial judge simply refused to allow the plaintiff to do that which he also refused to allow the defendant to do: bring safety orders before the jury. We therefore find that the plaintiff was not denied due process.

## II

### The Construction of Labor Code
### Section 6304.5

Plaintiff next argues that if Labor Code section 6304.5 is constitutional, it should be strictly construed. In presenting this argument he raises three subissues which are as follows:

[14]The thoroughness of the judge's admonition is portrayed in the following in-chambers discussion.

"[PLAINTIFF'S ATTORNEY]: Judge, this is [the witness].

"THE COURT: How do you do, sir. Counsel have indicated that you're likely to be called as a witness, that you may be asked questions your answers to which might cause you to feel that you should refer to Safety Orders.

"[THE WITNESS]: Yes, sir.

"THE COURT: The Court orders you at this time to not refer to Safety Orders in those terms.

"[THE WITNESS]: I understand.

"THE COURT: The reason for it, so that you will better understand, is that the law bars reference to Safety Orders in this kind of trial as the Court understands the law to be.

"[THE WITNESS]: Yes.

"THE COURT: For you to refer to. Safety Orders then could result in such error as would require us to try this case over, and I know you would not want to be a party to that.

"[THE WITNESS]: Very good.

"THE COURT: Any question?

"[THE WITNESS]: No, sir.

"THE COURT: Thank you . . .

"[THE WITNESS]: Thank you.

"THE COURT: May I just add this final word. If in connection with your testimony just before you answer a question you think, well, I must refer to a Safety Order, at that point you can turn to me and indicate you'd like to confer with counsel.

"[THE WITNESS]: All right, sir.

"THE COURT: And we will permit you to do so out of the presence of the jury.

"[THE WITNESS]: Yes.

"THE COURT: All right. Anything further?

"([The witness] left Chambers.)"

A. *Alleged Violations of the Construction Safety Orders*

It is plaintiff's view that where there is an undisputed violation of a safety order, these safety orders should be admitted into evidence. He cites part of a use note to BAJI No. 3.45: "There has not as yet been any decision as to the application of Labor Code, § 6304.5 to third party actions, that is, whether or not in such actions a violation of a safety order issued by the Division of Industrial Safety any longer constitutes negligence per se or whether such safety orders are not admissible in evidence." This quote is of little help to plaintiff for all it does is indicate that, until now, no appellate opinions have been published on this topic.

Nor are we persuaded by plaintiff's other assertions. The safety orders with which plaintiff is concerned are purportedly found in title 8 of the California Administrative Code, and are promulgated by the Division of Industrial Safety. As noted earlier, Labor Code section 6315.5 provides for the admissibility of safety and health orders and regulations. However, Labor Code section 6304.5, enacted and operative before plaintiff's injury, limits the applicability of section 6315.5. As already quoted in the margin, Labor Code section 6304.5 provides in pertinent part: "Neither this division nor any part of this division shall have any application to, nor be considered in, nor be admissible into, evidence in any personal injury or wrongful death action arising after the operative date of this section, except as between an employee and his own employer." The meaning could not be clearer; the safety orders are not admissible in evidence in third party actions by an employee.

B. *Cross-examination of Defendant's Expert Witnesses and Safety Orders*

Plaintiff further argues that the trial court committed prejudicial error by not allowing him to cross-examine defendant's expert witnesses with respect to alleged violations of the Safety Orders of the Division of Industrial Safety. He notes that not allowing him to cross-examine them in that fashion "permitted the defense experts to testify that the working conditions were safe and met the standard of care in the construction industry when they knew that there were two direct violations of Safety Orders." In support of his position, plaintiff cites *Hope* v. *Arrowhead & Puritas Waters, Inc.*, 174 Cal.App.2d 222, 230 [344 P.2d 428]: "Once an expert offers his opinion . . . he exposes himself to the kind of inquiry which ordinarily would have no place in the cross-examination of a

factual witness. The expert invites investigation into the extent of his knowledge, the reasons for his opinion including facts and other matters upon which it is based [citation], and which he took into consideration; and he may be 'subjected to the most rigid cross examination' concerning his qualifications, and his opinion and its sources [citation]." Plaintiff also cites Witkin: "Under the rule of limited admissibility . . . cross-examination to test accuracy of observation or other matters affecting credibility may be proper even though it brings in matters otherwise inadmissible." (Witkin, Cal. Evidence (2d ed. 1966) § 1209, p. 1116.) We are not persuaded.

The prohibition of the use of safety orders in a personal injury case goes beyond their admissibility as evidence: "Neither this division nor any part of this division shall have *any application to, nor be considered in,* nor be admissible into, evidence in any personal injury . . . action . . ." (Lab. Code, § 6304.5; italics added.) Furthermore, the authority cited by plaintiff is not persuasive. That authority does not *require* that the trial court allow the type of cross-examination plaintiff desired. The *Hope* court stated that an expert "*may* be 'subjected to the most rigid cross examination' concerning his qualifications, and his opinion and its sources [citation]." (*Hope* v. *Arrowhead & Puritas Waters, Inc., supra,* 174 Cal.App.2d 222, 230; italics added.) The Witkin language cited above is similarly conditional. Additionally, Evidence Code section 802 provides in part that "The court in its discretion *may* require that a witness before testifying in the form of an opinion be first examined concerning the matter upon which his opinion is based." (Italics added.) We conclude that the trial court did not err by not allowing plaintiff to base his cross-examination of expert defense witnesses on alleged violations of safety orders.

### C. *Plaintiff's Expert Witnesses and the Safety Orders*

Plaintiff next contends that despite Labor Code section 6304.5, his expert witnesses should have been allowed to base their opinions on alleged violations of safety orders. He further cites that portion of the Law Revision Commission's comment to Evidence Code section 801 which provides as follows: "The rule stated in subdivision (b) thus permits an expert to base his opinion upon reliable matter, *whether or not admissible,* of a type that may reasonably be used in forming an opinion upon the subject to which his expert testimony relates." Once again, plaintiff chooses to ignore the clear intendment of section 6304.5 of the Labor Code.

■ The relevant portion of section 801 is as follows: "If a witness is testifying as an expert, his testimony in the form of an opinion is limited to such an opinion as is: . . . [¶] (b) Based on matter (including his special knowledge, skill, experience, training, and education) perceived by or personally known to the witness or made known to him at or before the hearing, whether or not admissible, that is of a type that reasonably may be relied upon by an expert in forming an opinion upon the subject to which his testimony relates, *unless an expert is precluded by law from using such matter as a basis for his opinion.*" (Italics added.) Here an expert is precluded by section 6304.5 from basing his opinion on the safety orders. We conclude that the trial court did not err in so ruling.

Plaintiff also raises what could be characterized as a sub-subissue in this discussion. He notes that the trial court refused to allow expert witnesses to base their opinions in part on other recognized safety orders such as the standards of the American National Institute and the National Safety Council. Plaintiff argues that the court's "refusing to permit the plaintiffs' [*sic*] experts to base their opinion . . . on the other Safety Guides [was] error and deprived the jury of valuable testimony which would, if given, create weight to the opinions of the experts." This argument is without merit.

On the same day that the court made the above ruling the court retreated from its position and gave the plaintiff the opportunity to argue further whether he should be allowed to question his experts on the above-listed safety standards.[15] However, plaintiff's attorney did not take advantage of the judge's altered position, perhaps because, as he told the

---

[15]THE COURT: "And the Court's ruling earlier today that [plaintiff's expert witness] not be permitted to refer to the Safety Manuals. I have checked further into that and am not satisfied with the earlier ruling. And if plaintiff would like leave to argue the matter further, why I certainly would permit that to be done for the reason that I think the fact that the reference to the Labor Code question is of no help at all to us and for the reason that this is simply a statutory declaration that the Safety Orders provided by the Labor Code are not admissible, and I think cannot be held to apply to Safety Manuals that say, are put out by some national organization or something of that sort. I think it's an entirely different thing. Particularly when there is no offer of proof that the contents of the Manuals would be offered, but instead just the title of the book which distinguishes the case further from the Labor Code problem. So I think that in the light of Evidence Code Sections 80—well, particularly 802, that if plaintiff feels that plaintiff would want to pursue it further, leave should be granted to plaintiff to argue the matter further and to opposing counsel to respond. The only catch I can see in it is the one that was also raised by defense counsel earlier today as to whether the type of material that would be coming in would be confusing for the reason that we're concerned with the standard of care here and not with the standard of care that may—you might argue, be set up by some national organization. That's where I'll leave it with you. . . ."

judge, the expert witness in question was leaving the state. That, however, was not sufficient reason for plaintiff not to take advantage of the situation. If the safety standards of the American National Institute and the National Safety Council were that crucial to him, he could have attempted to recall the witness or obtain and use his deposition. (See, e.g., Code Civ. Proc., § 2024.) We conclude, therefore, that this contention by plaintiff is also without merit.

### III

### *The Directed Verdict*

Plaintiff next argues that violations of safety orders are negligence as a matter of law, and that here the facts indicated that the defendant violated certain safety orders. Therefore, plaintiff contends that his motion for a directed verdict on the issue of liability should have been granted. We do not agree.

As we discussed under issue II above, Labor Code section 6304.5 clearly provides that safety orders are not to be admitted into evidence: "Neither this division nor any part of this division shall have any application to, nor be considered in, nor be admissible into, evidence in any personal injury or wrongful death action arising after the operative date of this section, except as between an employee and his own employer." Nor is plaintiff aided by the just noted "except" clause. A general contractor no longer falls within the definition of an employer within the meaning of Labor Code section 6304. Section 6304, which once included in its definition of the term persons "having direction, management, control, or custody of any employment, place of employment, or any employee," was amended in 1971 and the amendment became operative in April 1972. Under the revision, "employer" is defined simply as having "the same meaning as in Section 3300."[16]

The conclusion that a general contractor is no longer an employer within section 6304 is further supported by a use note following BAJI No. 8.33 ("Owner or General Contractor in Control of Premises as 'Employer' under Labor Code"): "This instruction is not applicable to actions arising on or after April 1, 1972, by reason of the adoption of the 1971 amendment to Labor Code, § 6304 . . . by which . . . the general contractor is no longer an 'employer' of the employees of a subcontractor doing work thereon within the meaning of Labor Code, § 6304."

---

[16]For the text of section 3300, see footnote 5, *supra.*

We therefore determine that because the trial court was prohibited from admitting the safety orders found in the Administrative Code, it was not error for that court to deny plaintiff's motion for a directed verdict.

Plaintiff further asserts that as a matter of law contributory negligence could not be considered where the defendant has allegedly violated safety orders. We need not explore plaintiff's contentions further. Suffice it to say that because we have concluded that safety orders found in the Administrative Code could not be considered in any way in this matter, we find plaintiff's contention without merit.

## IV

### *Jury Instructions*

Plaintiff raises objections to various jury instructions.

### A. *Comparative Negligence*

He first argues that the trial court should have instructed on comparative negligence and notes that he requested instructions on this issue in the trial below. We do not agree with plaintiff's position.

The comparative negligence doctrine was established in *Li* v. *Yellow Cab Co.,* 13 Cal.3d 804 [119 Cal.Rptr. 858, 532 P.2d 1226]. The Supreme Court also clearly announced that the decision would have only limited retroactivity. "[W]e hold that the present opinion shall be applicable to all cases in which trial has not begun before the date this decision becomes final in this court, but that it shall not be applicable to any case in which trial began before that date (other than the instant case)—except that if any judgment be reversed on appeal for other reasons, this opinion shall be applicable to any retrial." (*Id.* at p. 829.) Trial in this case began on September 3, 1974, and ended on September 25, 1974. The *Li* decision became final in April 1975. We conclude, therefore, that the trial court did not err in refusing to give comparative negligence instructions.

### B. *The Contributory Negligence Instructions*

Plaintiff next notes that he "objected to the instructions on contributory negligence . . . and argued that under *Fonseca* v. *County of Orange,*

28 Cal.App.3d 361 [104 Cal.Rptr. 566], there was no contributory negligence as a matter of law." Plaintiff then "urges that there was not a scintilla of evidence by which a jury could find contributory negligence."

Plaintiff has misconstrued the *Fonseca* case. There the plaintiff, a cement finisher for a bridge builder, fell from a bridge under construction over the Santa Ana River, sustaining permanent injuries to his left arm. In determining whether the trial court erred in instructing on contributory negligence, Justice Kerrigan declared "While contributory negligence has been eliminated entirely as a bar to recovery in negligence actions arising from violations of safety regulations or orders in some jurisdictions [citation], in California, contributory negligence is available as a defense to the workman's action. [Citations.] [¶] On the other hand, assumption of risk has been barred as a defense in suits for negligence by workers against their employers [citations], and the rule has been extended to reach all cases of violation of safety statutes or safety orders [citations]. . . ." (*Id.* at pp. 367-368.) The court further declared that ". . . we do not eliminate contributory negligence as a defense in actions arising from a violation of safety orders. We merely limit its scope in deference to the enlightened policy factors underlying safety orders." (*Id.* at p. 370.) Although the judgment for the defendants was reversed on appeal, the reason for reversal appears to be that the facts in *Fonseca* fell in the gray area or overlap between the doctrine of contributory negligence and assumption of the risk. The court determined that there was no evidence to indicate that Mr. Fonseca was negligent in his conduct on the bridge. Hence it was error for the trial court to have given instructions on contributory negligence.

The present case is distinguishable from *Fonseca*. Here, the assumption of the risk defense was not pursued at trial and, consequently, the jury was not instructed on that defense; however, the jury was instructed on contributory negligence. Before the decision in *Li* v. *Yellow Cab Co.,* *supra,* 13 Cal.3d 804, contributory negligence was a proper defense in actions involving violations of safety orders (*Fonseca* v. *County of Orange, supra,* 28 Cal.App.3d 361, 370), as well as in ordinary negligence actions. Because the jury here was prohibited from considering the safety orders found in the Administrative Code, this is basically a case of ordinary negligence. The question then becomes whether there was evidence indicating that plaintiff had engaged in conduct which could be characterized as negligent. We are of the opinion that such evidence was indeed introduced.

The chain of events surrounding plaintiff's fall from the scaffold was triggered by his cutting his hand on an unsheathed axe worn in his nail belt. The height of the scaffold was a matter within plaintiff's control. Moreover, evidence was introduced that plaintiff had been issued a safety belt and line and had been told to use those devices. There was also evidence that while working on the scaffold, immediately before the injury, he had not connected his safety line to any sturdy fixture. Plaintiff argues that the line in question (approximately 9-10 feet in length) was too short to tie around a rafter so that he could work comfortably on the scaffold walkboard. This was a question of fact for the jury to determine. There was, however, testimony that one to two feet of the rope could be used to tie around a rafter, and approximately three and one half to four feet of the rope would span from the rafter to the plaintiff's midsection; in addition one to two feet of the rope could be allowed for slack with which to work.

Considering the plaintiff's wearing an unsheathed axe about his waist, the height of the scaffold from the ground (12 feet), the maneuvers plaintiff was making by flipping the bundles of shingles from the scaffold to the roof, the fact that he had been given safety equipment but did not make full use of it, nor apparently asked for assistance if he had problems with it, there was ample evidence warranting the trial court's giving instructions on contributory negligence.

## C. *Plaintiff's Request for Special Instructions*

Plaintiff asserts that the trial court committed prejudicial error by refusing to give two requested jury instructions. The first requested jury instruction was "You are instructed that it was not contributory negligence for Lester Spencer to be on the ladder jack scaffolding." Plaintiff argues that a jury could have found him contributorily negligent when he used the scaffolding in question. He further cites *Fonseca* v. *County of Orange, supra,* 28 Cal.App.3d 361, for the proposition that, as a matter of law, he could not be contributorily negligent: ". . . it is not unreasonable and not contributory negligence for a worker to continue work despite his employer's pre-existing violation of safety orders whether or not the worker recognizes and appreciates the hazard." (*Id.* at p. 370.)

Once again, plaintiff has failed to persuade us. The *Fonseca* case is distinguishable. The accident in that case occurred in January 1970, a

time when evidence of safety orders could be considered in a third party, personal injury case. However, as noted earlier, the Legislature amended Labor Code statutes or added others, resulting in a change in the applicable law. Consequently, at the time that the accident in this case occurred (Oct. 1972), safety orders could no longer be considered in third party, personal injury cases.

In addition, jury ". . . instructions must be considered *in their entirety,* and if, as so considered, they state the law of the case fairly and clearly, then they are, as a whole, unobjectionable . . . ." (*Douglas* v. *Southern Pacific Co.,* 203 Cal. 390, 396 [264 P. 237]; italics added.) Turning to the present case, any possible problem with the jury inferring that the plaintiff was contributorily negligent was cured by the giving of BAJI No. 3.40: "When a person's lawful employment requires that he work in a dangerous location or a place that involves unusual possibilities of injury, or requires that in the line of his duty he take risks which ordinarily a reasonably prudent person would avoid, the necessities of such a situation, insofar as they limit the caution that he can take for his own safety, lessen the amount of caution required of him by law in the exercise of ordinary care."

We conclude that the trial court's refusal to give the instruction in question was not error.

■■■ The second contested jury instruction requested by plaintiff reads as follows: "You are instructed that as a matter of law the fact that Lester Spencer cut his hand was not a proximate cause of his fall." Plaintiff again attempts to compare the situation here to *Fonseca* v. *County of Orange, supra,* 28 Cal.App.3d 361; the *Fonseca* court held that while Fonseca had slipped on some wet cement and fell, the sole reason for his fall was the contractor's failure to install scaffolding and railings. (*Id.* at p. 367.) Plaintiff then argues, "By the same reasoning the fact that Mr. Spencer cut his hand on his axe could not be a proximate cause[.] [T]he *sole* reason for the fall was the contractor's failure to provide a safety line. Therefore, plaintiff's special instruction should have been given."

In response, defendant makes several cogent arguments with which we agree. For example, other instructions given (e.g., BAJI No. 3.40

discussed above) were sufficient to cover this issue. Moreover, the fact that Mr. Spencer cut his hand on his axe was minimized throughout the entire trial. Lastly, the quoted commentary from the *Fonseca* case is distinguishable from the case at bench; the *Fonseca* court was concerned with a contributory negligence instruction which was erroneously given. In contrast, the instruction in question here deals with the proximate cause of plaintiff's fall. We conclude that the trial court did not commit error by refusing the second proposed instruction.

### D. *BAJI Nos. 3.12, 3.13 and 3.14*

Plaintiff lastly asserts that the court below committed prejudicial error by giving BAJI instructions Nos. 3.12,[17] 3.13[18] and 3.14.[19] He argues that when those instructions are read together the jury could have believed that he "was contributorily negligent for working in a dangerous situation, and that it was his responsibility to exercise a higher standard of care than required." Plaintiff then submits that the proper standard to which a workman should be held was set forth in BAJI No. 3.40 as given.

■ Assuming, without deciding, that plaintiff made the proper objections to the instructions in question and that the trial court did err in giving BAJI Nos. 3.12, 3.13 and 3.14, that error was not prejudicial. "The instructions must be considered in their entirety, and if, as so considered, they state the law of the case fairly and clearly, then they are, as a whole, unobjectionable, even though by selecting isolated passages from single instructions they may in some respects be amenable to just criticism." (*Douglas* v. *Southern Pacific Co., supra,* 203 Cal. 390, 396.) Any error which may have been contained in BAJI Nos. 3.12, 3.13 and 3.14 was corrected by instruction No. 3.40 which was requested by plaintiff

[17]Instruction No. 3.12 as given reads: "The amount of caution required of a person in the exercise of ordinary care depends upon the danger which is apparent to him or should be apparent to a reasonably prudent person under circumstances similar to those shown by the evidence."

[18]Instruction No. 3.13 as given reads: "Every person who, himself, is exercising ordinary care, has a right to assume that every other person will perform his duty and obey the law, and in the absence of reasonable cause for thinking otherwise, it is not negligence for such a person to fail to anticipate an accident which can be occasioned only by a violation of law or duty by another person."

[19]Instruction No. 3.14 as given reads: "In the absence of reasonable cause for thinking otherwise, a person who himself is exercising ordinary care has a right to assume that other persons are ordinarily intelligent and possessed of normal sight and hearing."

and which, plaintiff asserts, states the correct standard of care for a workman. We therefore find this argument by plaintiff to lack merit.

The judgment is affirmed.

Tamura, Acting P. J., and Kaufman, J., concurred.

A petition for a rehearing was denied December 8, 1976 and appellant's petition for a hearing by the Supreme Court was denied February 17, 1977. Mosk, J., was of the opinion that the petition should be granted.

### APPENDIX

The legislative attempts to alter Labor Code section 6304.5 have consistently met with failure. Those attempts were:

(1) Assembly Bill No. 1170—"An act to . . . repeal Section 6304.5 of the Labor Code . . ." —Introduced by Assemblyman Mead, referred to the Committee on Finance and Insurance where it failed passage and subsequently "died" pursuant to article IV, section 10(a) of the Constitution. (That section provides in part that if a bill introduced in the first year of a two-year session fails to be passed by the house of origin by January 30 of the second year of that session, the bill may no longer be acted upon.)

(2) Assembly Bill No. 3149—"An act to . . . repeal Section 6304.5 of the Labor Code . . ." —Introduced by Assemblymen Lockyer, Meade. Berman. Fenton, Brown, and McCarthy. Read in Assembly for the first time on February 14, 1974; after several encounters with the Committee on Finance and Insurance the bill was finally passed in the House on August 8, 1974, and sent to the Senate. There it was read and referred to the Committee on Industrial Relations where it was held without recommendation. On November 30, 1974, it left the committee without further action.

(3) Assembly Bill No. 467—Originally introduced by Assemblymen Berman, Lockyer, and Rosenthal. From the time it was initially introduced (Jan. 13, 1975) until the time the Governor signed it into law (Sept. 1976), Assembly Bill No. 467 underwent numerous amendments, all of which (with one exception) occurred in the Senate.

As amici point out in their brief, Assembly Bill No. 467 originally proposed a change in the definition of employer as set forth in Labor Code section 6304 to include not only those entities listed in section 3300 but "every person having direction, management, control, or custody of any employment, place of employment, or any employee." At the time Assembly Bill No. 467 was first amended in the Senate, the proposal to alter the definition of employee as found in section 6304 was dropped although the proposal to repeal section 6304.5 remained. However, by the time Assembly Bill No. 467 reached its fourth Senate amendment, the proposal to repeal section 6304.5 was eliminated. In fact, at that time Assembly Bill No. 467 was completely different from Assembly Bill No. 467 as originally introduced. The later version dealt with employees' compensation under workers' compensation law for both temporary and permanent disability. Thereafter, Assembly Bill No. 467 was amended two additional times. However, the bill as approved by the Senate on August 31, 1976, and signed by the Governor on September 19, 1976 (Stats. 1976, ch. 1017, No. 9 West's Cal. Legis. Service, p. 4305 et seq., No. 5 Deering's Adv. Legis. Service, p. 435) does not deal in any manner with Labor Code sections 6304 or 6304.5.